**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **RAYMOND DURANT, et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-147** |
| **GRETNA CITY, et al.** | **SECTION: "G"(2)** |

## ORDER AND REASONS

In this litigation, Plaintiffs Raymond Durant ("Durant") and Nena Fairley ("Fairley") (collectively, "Plaintiffs") bring multiple claims under 42 U.S.C. § 1983 ("Section 1983") and Louisiana law against the City of Gretna ("Gretna"), Chief of Police Arthur Lawson ("Chief Lawson"), and Officer Tramell Brooks ("Officer Brooks") (collectively, "Defendants").[1] Before the Court is Defendants' "Motion for Summary Judgment," in which Defendants request summary judgment on all of Plaintiffs' claims.[2] Considering the motion, the memoranda in support and opposition, the record, and the applicable law, the Court grants the motion in part and denies it in part. Defendants are entitled to summary judgment on all of Fairley's claims in this litigation. Furthermore, Defendants are entitled to summary judgment on all of Durant's claims in this litigation except:

(1) Durant's excessive force claim against Officer Brooks under the Fourth Amendment;

(2) Durant's bystander-liability claim against Officer Brooks;

(3) Durant's *Monell* claim against Gretna;

[1] Rec. Doc. 1.

[2] Rec. Doc. 19; Rec. Doc. 19-1.

(4) Durant's battery claim against Officer Brooks under Louisiana law;

(5) Durant's malicious prosecution claim against Officer Brooks under Louisiana law; and

(6) Durant's vicariously liability claim against Gretna and Chief Lawson under Louisiana law for Officer Brooks's alleged battery and malicious prosecution.

## I. Background

The undisputed evidence provides the following facts. On March 16, 2018, Durant drove his vehicle to Key's Fuel Mart ("Key's") in Gretna, Louisiana at approximately 8:45 p.m. to pick up Fairley when she finished work at 9:00 p.m.[3] Around 9:00 p.m., Officer Brooks, who was patrolling the area near Key's, observed multiple individuals communicating around two vehicles in Key's parking lot.[4] Officer Brooks observed that all of the lights over Key's gasoline pumps were turned off.[5] As Officer Brooks approached Key's parking lot, he observed Plaintiffs' vehicle begin to exit Key's parking lot.[6] Yet, when Plaintiffs spotted Officer Brooks's police vehicle, they "threw [their] car in reverse before the car could even settle," reversed into a parking spot at Key's, and turned their vehicle's headlights off.[7] Durant admitted that he became "scared and

[3] Rec. Doc. 19-4 at 12.

[4] Rec. Doc. 19-3 at 30–31. Durant admitted that his cousin's vehicle was at Key's on the night in question.

[5] *Id.* Plaintiffs do not point to any evidence to show the lights over Key's gasoline pumps were not turned off.

[6] *Id.* at 32. Plaintiffs do not point to any evidence to dispute that Officer Brooks observed Plaintiffs begin to exit Key's parking lot after 9:00 p.m. Durant points to his deposition testimony in which he testifies that he entered Key's parking lot at 8:45 p.m., but Officer Brooks's testimony concerns Durant's attempted *exit* at 9:00 p.m. Put another way, Durant points to evidence regarding his entrance into Key's and Officer Brooks points to evidence regarding Durant's attempted exit from Key's. Thus, both accounts are undisputed.

[7] *Id.* at 29. Durant does not point to any evidence to dispute the manner in which he backed up his vehicle or whether he immediately turned his lights off. Durant tries to dispute Officer Brooks's testimony by pointing out that he arrived at Key's and backed up his vehicle 15 to 20 minutes before Fairley's shift ended at 9:00 p.m. That testimony from Durant does not dispute Officer Brooks's testimony—that Durant was *exiting* Key's parking lot after 9:00 p.m. and erratically stopped and reversed his vehicle. Put another way, Durant's testimony concerns his entrance into Key's parking lot at 8:45 p.m., and Officer Brooks's testimony concerns Durant's attempted exit around 9:00 p.m. Accordingly, it is undisputed that Durant

nervous" and "didn't leave out [Key's] parking lot right away" because other police officers had recently followed his cousin's vehicle when exiting Key's parking lot at approximately 9:00 p.m.[8]

Officer Brooks made a U-turn after noticing Plaintiffs' immediate reversal.[9] He then observed Plaintiffs' vehicle quickly depart Key's parking lot and turn into a nearby Walmart parking lot.[10] Plaintiffs, instead of parking their vehicle at Walmart and entering the store, accelerated through Walmart's parking lot "at a good rate of speed"—just to immediately exit Walmart's parking lot.[11] Plaintiffs subsequently parked on Richard Street near the Walmart in question, exited the vehicle, and started walking away from the vehicle until Officer Brooks arrived and stated: "Bring [y]our asses here."[12]

Plaintiffs asked Officer Brooks to explain the reason he was detaining them, and Officer Brooks responded that Plaintiffs were under investigation.[13] Durant subsequently "became boisterous and started using vulgar language towards [Officer] Brooks."[14] Plaintiffs informed

---

threw his car in reverse before the car could even settle, backed up his vehicle into a parking spot, and turned off the vehicle's headlights around 9:00 p.m.

[8] Rec. Doc. 19-4 at 12.

[9] Rec. Doc. 19-3 at 66. Plaintiffs do not point to any evidence to dispute that Officer Brooks conducted a U-turn.

[10] *Id.* at 68. Plaintiffs do not point to any evidence to dispute that they entered Walmart's parking lot. Plaintiffs also do not point to any evidence to dispute the manner in which Durant drove the vehicle, including how quickly he accelerated through Walmart's parking lot.

[11] *Id.* Plaintiffs do not point to any evidence to dispute how quickly Plaintiffs accelerated through Walmart's parking lot.

[12] Rec. Doc. 19-4 at 22. The parties agree that Plaintiffs were walking down Richard Street when Officer Brooks detained them. Defendants do not point to any evidence to dispute whether Officer Brooks stated "Bring [y]our asses here."

[13] *Id.* Defendants do not point to any evidence to dispute whether Plaintiffs (1) asked why they were being detained and (2) Officer Brooks responded by telling them they were under investigation.

[14] Rec. Doc. 19-3 at 75. Officer Brooks testified that he placed Durant and Fairley in handcuffs for safety reasons because Durant "became boisterous and started using vulgar language towards [Officer] Brooks." *Id.* Plaintiffs do not point any evidence to dispute that Durant became boisterous and starting using vulgar

Officer Brooks that they were walking home toward their children.[15] Officer Brooks responded by stating "[f]uck your kids," grabbing Durant, and slamming Durant onto Officer Brooks's police vehicle.[16] Officer Brooks searched, handcuffed, and placed Durant and Fairley into his police vehicle's rear seat.[17] While Plaintiffs remained detained in Officer Brooks's police vehicle, a K-9 Officer, named Matthew Kraly ("Officer Kraly"), arrived at the detention scene to assist Officer Brooks.[18]

From this point on, the parties point to record evidence to genuinely dispute several material facts. Plaintiffs contend that Durant reached for his cell phone in his back pocket, despite being handcuffed, in order to videotape Officer Brooks and Officer Kraly on Facebook Live.[19] Officer Kraly supposedly inquired about Durant's suspicious actions in the police vehicle's rear seat, and Durant allegedly responded that he was videotaping the officers on Facebook Live.[20] Plaintiffs claim that Officer Kraly responded by punching and kicking Durant—while he remained handcuffed in the police vehicle's rear seat—in order to retrieve Durant's cell phone.[21] Plaintiffs

---

language toward Officer Brooks.

[15] Rec. Doc. 19-4 at 22–23. Defendants do not point to any evidence to dispute whether Plaintiffs told Officer Brooks that they were walking home toward their kids.

[16] *Id.* at 23–24. Defendants do not point to any evidence to dispute the manner in which Officer Brooks searched and seized Durant. Defendants also do not point to any evidence to dispute whether Officer Brooks stated "[f]uck your kids" to Plaintiffs.

[17] *Id.* at 25–27. Defendants do not point to any evidence to dispute that Officer Brooks searched, handcuffed, and placed Plaintiffs in his police vehicle.

[18] *Id.* at 31–32. The parties agree that Officer Kraly arrived at the detention scene.

[19] *Id.*

[20] *Id.* at 33.

[21] *Id.* at 33–34.

also claim that Officer Brooks punched and kicked Durant while retrieving the cell phone[22] and kicked Durant again after the cell phone was obtained.[23] Durant claims that he endured ongoing physical pain, rib soreness, bruising, and psychological injuries from Officer Brooks and Officer Kraly's alleged punching and kicking.[24] Officer Brooks released Fairley from the detention scene, but he arrested Durant due to his multiple outstanding attachments in Gretna and Jefferson Parish.[25] Durant's outstanding attachments purportedly involved prior traffic tickets and theft.[26]

Thereafter, while Officer Brooks allegedly escorted Durant to the Jefferson Parish Correctional Center,[27] Durant allegedly stated that he would file a complaint against Officer Brooks for police misconduct.[28] Officer Brooks allegedly responded by charging Durant with threatening a police officer pursuant to Gretna City Ordinance 16-66.1 ("Ordinance 16-66.1").[29] Gretna eventually dismissed Durant's criminal charge for violating Ordinance 16-66.1.[30]

On January 9, 2019, Plaintiffs filed a Complaint in this Court against Officer Brooks, Gretna, Chief Lawson, and "Unidentified Parties."[31] On November 4, 2019, Defendants filed the

---

[22] Rec. Doc. 34-1 at 2.

[23] Rec. Doc. 19-5 at 59.

[24] Rec. Doc. 34-1 at 2; Rec. Doc. 19-4 at 73–79.

[25] *Id.* at 44. The parties agree that (1) Fairley was released from the detention scene and (2) Officer Brooks told Durant he was under arrest for outstanding attachments.

[26] Rec. Doc. 19-11. The parties do not dispute the charges in Durant's outstanding attachments.

[27] Rec. Doc. 19-4 at 46.

[28] Rec. Doc. 34-1 at 3.

[29] *Id.*

[30] *Id.* The parties do not dispute this fact.

[31] Rec. Doc. 1 at 7.

instant motion requesting summary judgment on all of Plaintiffs' claims.[32] On November 19, 2019, Plaintiffs' filed their opposition to the instant motion.[33] On December 2, 2019, with leave of court, Defendants filed a reply brief in further support of the instant motion.[34] On December 30, 2019, with leave of court, Plaintiffs filed a sur-reply in further opposition to the instant motion.[35] On January 3, 2020, with leave of court, Defendants filed a supplemental reply in response to Plaintiffs' sur-reply.[36]

## II. Parties' Arguments

### *A. Defendants' Arguments in Support of the Motion for Summary Judgment*

#### 1. Plaintiffs were not Unlawfully Seized under the Fourth Amendment and Louisiana Law

Plaintiffs allege that Officer Brooks's seizure (a) violated Plaintiffs' Fourth Amendment right under the United States Constitution and (b) constituted false arrest and false imprisonment under Louisiana law.[37] Defendants request summary judgment on those claims because they assert Officer Brooks had reasonable suspicion to detain Plaintiffs and probable cause to arrest Durant.[38] Defendants also argue that Fairley was never arrested.[39]

---

[32] Rec. Doc. 19.

[33] Rec. Doc. 22.

[34] Rec. Doc. 25.

[35] Rec. Doc. 34.

[36] Rec. Doc. 37.

[37] Rec. Doc. 1 at 7.

[38] Rec. Doc. 19-1 at 9–16.

[39] *Id.* at 10.

### *a. Fourth Amendment*

Defendants point out that "police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot."[40] Defendants argue that Officer Brooks had reasonable suspicion to detain Plaintiffs for the following reasons.[41] First, Officer Brooks observed multiple individuals communicating around two vehicles at Key's at night—while all lights hanging over the gasoline pumps were turned off.[42] Second, Officer Brooks observed Plaintiffs abruptly throw their car in reverse before the car could even settle, back up into a parking spot at Key's, and turn their vehicle's headlights off—all once spotting Officer Brooks.[43] Third, Officer Brooks observed Plaintiffs' vehicle quickly exit Key's parking lot, turn into a Walmart parking lot, and accelerate through Walmart's parking lot "at a good rate of speed"—just to immediately exit Walmart's parking lot.[44] Finally, Officer Brooks observed Plaintiffs park on Richard Street near Walmart and "quickly walk away from the vehicle."[45] Defendants contend that those observations provided Officer Brooks with reasonable suspicion to detain Plaintiffs.[46] Nevertheless, at minimum, Defendants argue Officer Brooks is entitled to qualified immunity for his investigation and detention.[47]

---

[40] *Id.* at 9 (internal quotation marks omitted).

[41] *Id.* at 11.

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Id.* at 11–12.

[46] *Id.* at 12.

[47] *Id.* at 16.

*b. False Arrest and False Imprisonment*

Defendants request summary judgment on Plaintiffs' claims for false arrest and false imprisonment against Officer Brooks.[48] Defendants contend that "a facially valid warrant immunizes officers from false arrest and false imprisonment claims" under Louisiana law.[49] Defendants contend that Durant was arrested pursuant to multiple outstanding attachments.[50] Moreover, with respect to Fairley, Defendants argue that she was never arrested.[51] Instead, Defendants argue that she was "detained at the scene pending an investigation due to the suspicious conduct [Officer Brooks] observed."[52] Defendants claim that Officer Brooks's detention of Fairley was lawful because Officer Brooks had reasonable suspicion of criminal activity.[53]

**2. Officer Brooks's Use of Force was not Excessive and Unreasonable under the Fourth Amendment**

Defendants request summary judgment on Plaintiffs' excessive force claims against Officer Brooks under the Fourth Amendment.[54] Defendants argue that Plaintiffs cannot prove the three required elements of an excessive force claim.[55] Those three elements are:

> (1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive to the need, and (3) the excessiveness of which was clearly

[48] *Id.* at 13, 16.

[49] *Id.* at 9.

[50] *Id.* at 11.

[51] *Id.* at 10.

[52] *Id.* at 11.

[53] *Id.* at 13.

[54] *Id.* at 23–40.

[55] *Id.*

objectively unreasonable.[56]

Plaintiffs contend that Officer Brooks used excessive force when handcuffing Plaintiffs and obtaining Durant's cell phone.[57] Defendants argue that Officer Brooks's alleged actions did not entail excessive force.[58]

*a. Handcuffing*

Defendants point to Plaintiffs' deposition testimony to establish that Officer Brooks did not employ excessive force when handcuffing Plaintiffs.[59] Durant testified in his deposition that Officer Brooks shoved him and caused him to move "forward on the car."[60] Fairley testified in her deposition that Officer Brooks "grabbed [Durant] by the hand and put his hand on the car."[61] Defendants claim that those allegations are insufficient to support an excessive force claim because "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."[62] Finally, Defendants argue that Officer Brooks is entitled to qualified immunity because his actions—briefly placing handcuffs on individuals subject to an investigatory stop—were not objectively unreasonable in light of clearly established law.[63]

---

[56] *Cass v. City of Abilene*, 814 F.3d 721, 731 (5th Cir. 2016) (quoting *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000) (internal quotation marks omitted).

[57] Rec. Doc. 1 at 8–9.

[58] Rec. Doc. 19-1 at 26, 30.

[59] *Id.* at 28–29.

[60] Rec. Doc. 19-4 at 24.

[61] Rec. Doc. 19-1 at 29.

[62] *Id.*

[63] *Id.* at 30.

*b. Retrieval of Durant's Cell Phone*

Defendants also point to Plaintiffs' deposition testimony to establish that Officer Brooks did not employ excessive force when retrieving Durant's cell phone.[64] According to Defendants, Plaintiffs testified in their depositions that Officer Brooks only kicked Durant while closing the police vehicle's rear door.[65] Defendants deny that Officer Brooks ever kicked Durant.[66] Yet, accepting Durant's deposition testimony as true, Defendants point out that Durant admitted to not seeking any medical treatment for the alleged physical pain, rib soreness, and psychological injuries endured during the investigatory stop.[67] Defendants also point out that, when asked to describe the physical pain and suffering sustained from Officer Brooks's excessive force, Durant responded: "Wasn't too much physical pain."[68] For these reasons, Defendants conclude that Durant's rib soreness is *de minimis* and insufficient to support an excessive force claim.[69]

Moreover, Defendants argue that Plaintiffs' psychological injuries—nightmares, fear of the police, and sleepless nights—commenced before the March 16, 2018 investigatory stop in this case.[70] Plaintiffs allegedly suffered from nightmares and sleepless nights because of a *prior* incident with Officer Brooks in December 2017.[71] Finally, Defendants contend that Officer Brooks is entitled to qualified immunity from suit with respect to Plaintiffs' excessive force

[64] *Id.*

[65] *Id.* at 31–32.

[66] *Id.* at 32.

[67] *Id.* at 34.

[68] *Id.*

[69] *Id.* at 41.

[70] *Id.* at 34–39.

[71] *Id.* at 36, 39. The December 2017 incident with Officer Brooks is not a part of the current litigation.

claims.[72]

### 3. Officer Brooks did not Commit Battery under Louisiana Law

According to Defendants, "[i]f an officer's actions in detaining or arresting an individual are deemed to be reasonable under the circumstances with regard to federal constitutional claims for . . . excessive force, the related state law claims for battery should also be dismissed."[73] For the identical reasons discussed above, Defendants argue that Officer Brooks did not employ excessive force under federal law.[74] Therefore, Defendants conclude that Plaintiffs' related battery claims under Louisiana law should be dismissed.[75]

### 4. Officer Brooks is not Liable under Section 1983's Bystander-liability Doctrine

Defendants request summary judgment on Plaintiffs' "bystander liability" claims against Officer Brooks.[76] Plaintiffs allegedly must prove the following elements to prevail on a bystander claim: the defendant officer: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) is present at the scene of the constitutional violation; (3) has a reasonable opportunity to prevent the harm; and (4) chooses not to act".[77] Plaintiffs must also prove (5) an underlying use of excessive force.[78]

Defendants argue that Officer Brooks cannot "have any bystander liability for any actions

---

[72] *Id.* at 39, 41.

[73] *Id.* at 25.

[74] *See id.* at 23–40.

[75] *See id.*

[76] *Id.* at 48.

[77] *Id.*

[78] *Id.*

committed by an officer who is not named as a defendant to these proceedings."[79] Defendants claim that Officer Kraly is not a named defendant in this case and, therefore, Officer Kraly's alleged excessive force cannot suffice for the underlying excessive force required for Plaintiffs' bystander claim.[80] Defendants also argue that Officer Brooks is entitled to qualified immunity from Plaintiffs' bystander-liability claims.[81]

**5. Officer Brooks did not Retaliate against Durant's First Amendment Activity**

Defendants request summary judgment on Durant's First Amendment retaliation claim against Officer Brooks.[82] Defendants argue that Officer Brooks had probable cause to arrest Durant due to his multiple outstanding attachments.[83] Defendants quote Fifth Circuit precedent stating that:

> If [probable cause] exists, any argument that the arrestee's speech as opposed to her criminal conduct was the motivation for her arrest must fail, no matter how clearly that speech may be protected by the First Amendment.[84]

Defendants thus conclude that Durant's arrest was supported by probable cause and, therefore, his First Amendment retaliation claim should be dismissed.[85]

Defendants contend that Durant originally testified in his deposition that Officer Kraly, as opposed to Officer Brooks, obtained his cell phone.[86] Yet, according to Defendants, even if this

---

[79] *Id.*

[80] *Id.*

[81] *Id.*

[82] *Id.* at 16–21.

[83] *Id.* at 21.

[84] *Id.* at 20–21.

[85] *Id.*

[86] *Id.*

Court holds that Officer Brooks seized the cell phone, Durant was in handcuffs and in the rear seat of Officer Brooks's police vehicle when Durant's cell phone was procured.[87] Accordingly, Defendants conclude that Officer Brooks would be entitled to qualified immunity because no clearly established law provided that an arrestee maintains a constitutional right to record police activity while detained or arrested upon probable cause.[88]

**6. Officer Brooks did not Maliciously Prosecute Durant under Section 1983 or Louisiana Law**

Defendants request summary judgment on Durant's malicious prosecution claim against Officer Brooks under Section 1983 because the "federal Constitution does not include a freestanding right to be free from malicious prosecution."[89] Moreover, Defendants argue that Officer Brooks "should be granted qualified immunity against Durant's claims for malicious prosecution because his arrest of Durant on seven outstanding attachments was lawful and did not violate any clearly established law."[90]

Next, Defendants argue that Durant cannot prove the required elements of a malicious prosecution claim under Louisiana law.[91] According to Defendants, to prevail on a malicious prosecution claim under Louisiana law, Durant must prove the following six elements:

> (1) the commencement or continuance of an original criminal or civil proceeding, (2) its legal causation by the present defendant in the original proceeding, (3) a favorable termination in favor of the present plaintiff, (4) the absence of probable cause for such a proceeding, (5) the presence of malice, and (6) damage

---

[87] *Id.*

[88] *Id.*

[89] *Id.* at 41 (internal quotation marks and citation omitted).

[90] *Id.* at 45.

[91] *Id.* at 43.

conforming to legal standards resulting to the plaintiff.[92]

Defendants argue that Durant cannot prove element three—a favorable termination in favor of the present plaintiff—which requires the criminal or civil proceeding to end in a "bona fide termination" in Durant's favor.[93] Defendants argue that a "procedural dismissal of the charges, even if the dismissal is with prejudice, does not [entail a bona fide termination in favor of Durant]."[94] Defendants further argue that the criminal charge giving rise to Durant's malicious prosecution claim—violating Ordinance 16-66.1—was dismissed because Durant pleaded guilty to multiple unrelated charges.[95] For these reasons, Defendants conclude that Durant cannot prove the Ordinance 16-66.1 charge resulted in a "bona fide termination" in his favor.[96]

Defendants also argue that Durant cannot prove element four: the absence of probable cause.[97] Defendants contend that because Durant "was arrested on seven validly issued outstanding attachments," Durant cannot prove he was arrested without probable cause.[98]

**7. Officer Brooks did not Intentionally Inflict Emotional Distress upon Plaintiffs**

Defendants request summary judgment on Plaintiffs' claims against Officer Brooks for intentional infliction of emotional distress.[99] According to Defendants, a plaintiff must prove the

---

[92] *Id.* at 42 (citing *St. Paul Mercury Insurance Co. v. Williamson*, 224 F.3d 425 (5th Cir. 2000)).

[93] *Lemoine v. Wolfe*, 2014-1546 (La. 3/17/15); 168 So. 3d 362, 368 (quoting *Jones v. Soileau*, 448 So.2d 1268, 1271 (La.1984)).

[94] Rec. Doc. 19-1 at 43.

[95] *Id.* at 43–44.

[96] *Id.* at 45.

[97] *Id.* at 43.

[98] *Id.*

[99] *Id.* at 46.

following three elements to prevail on a claim for intentional infliction of emotional distress under Louisiana law:

> (1) the defendant's conduct was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant intended to inflict severe emotional distress, or knew that such distress would be certain or substantially certain to result from his conduct.[100]

Defendants first contend that "extreme and outrageous" conduct must "go beyond all possible bounds of decency" and "be regarded as atrocious and utterly intolerable in a civilized community."[101] Defendants claim that Officer Brooks's conduct—arresting Durant on multiple outstanding attachments—was not extreme and outrageous.[102] Second, Defendants claim that Plaintiffs have not suffered severe emotional distress.[103] Finally, Defendants claim that Plaintiffs failed to offer any evidence demonstrating that Officer Brooks intentionally inflicted severe emotional distress upon Plaintiffs.[104]

**8. Officer Brooks did not Conspire with Other Officers to Violate Plaintiffs' Rights under Section 1983 and Louisiana Law**

Defendants first argue that Officer Brooks did not violate Plaintiffs' constitutional rights and therefore any conspiracy claim must fail.[105] Second, Defendants argue that "[P]laintiffs have failed to allege or plead any facts to establish that [Officer] Brooks and [other police officers] agreed to commit any actions that violated their constitutional rights."[106] Defendants conclude

[100] *Id.* at 45–46.

[101] *Id.* at 46.

[102] *Id.*

[103] *Id.*

[104] *Id.*

[105] *Id.* at 47.

[106] *Id.*

that Plaintiffs' "bald allegation of conspiracy is insufficient" to support their conspiracy claims.[107]

### 9. Gretna and Chief Lawson are not Vicariously Liable for Officer Brooks's Alleged Torts under Louisiana Law

Defendants request summary judgment on Plaintiffs' claim that Gretna and Chief Lawson are vicariously liable for Officer Brooks's alleged torts under Louisiana law.[108] Defendants argue that Gretna and Chief Lawson are not liable for torts committed by Officer Brooks's because he did not commit any torts under Louisiana law.[109]

### 10. Gretna Ordinance 16-66.1 does not Violate the First Amendment

Defendants concede that the Fifth Circuit, in *Seals v. McBee*, effectively rendered Ordinance 16.66.1 overbroad and in violation of the First Amendment.[110] Yet, on August 14, 2019, the Gretna City Council allegedly adopted Ordinance 4885 to amend and cure Ordinance 16.66.1's constitutional defect.[111] Defendants claim that Ordinance 4885 precisely defined the formerly overbroad terms in Ordinance 16-66.1.[112] Accordingly, Defendants contend that this Court should deny Durant's request to hold Ordinance 16-66.1 unconstitutional under the First Amendment.[113]

### 11. Gretna and Chief Lawson are not Liable under *Monell* for Gretna Ordinance 16-66.1

Durant claims that Gretna and Chief Lawson are liable under *Monell v. Department of*

---

[107] *Id.*

[108] *Id.* at 49.

[109] *See id.* at 50; *see also* Rec. Doc. 25-2 at 15.

[110] Rec. Doc. 19-1 at 50.

[111] *Id.*

[112] *Id.*

[113] *Id.* at 51.

*Social Services* for Ordinance 16-66.1's unconstitutionality and Durant's arrest pursuant to Ordinance 16-66.1.[114] Defendants request summary judgment on Durant's *Monell* claim.[115] Under *Monell*, the plaintiff must demonstrate that the municipality was the "moving force" behind the injury alleged.[116] Defendants argue that Officer Brooks initially arrested Durant because of multiple outstanding attachments—not violating Ordinance 16-66.1.[117] Therefore, Defendants conclude that Ordinance 16-66.1 was not the "moving force behind Durant's arrest."[118]

**12. Officer Brooks is not Liable for Kidnapping Durant**

Defendants argue that Durant's kidnapping claim is "untenable, unsupported in law or fact, and is made in bad faith" because Durant was arrested on valid and outstanding attachments.[119] Defendants conclude that Durant's kidnapping claim should be dismissed.[120]

***B. Plaintiffs' Opposition to the Motion for Summary Judgment***

In opposition, Plaintiffs argue that summary judgment should not be granted because genuinely disputed material facts remain for the jury to decide. The Court will summarize each argument by Plaintiffs. The Court notes that Plaintiffs' opposition brief does not mention, or provide evidence in support of, several claims—including intentional infliction of emotional

---

114 Rec. Doc. 1 at 15–16.

115 Rec. Doc. 19-1 at 52.

116 *Bishop v. Arcuri*, 674 F.3d 456, 467 (5th Cir. 2012) (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404–05 (1997)).

117 Rec. Doc. 19-1 at 52.

118 *Id.*

119 *Id.* at 22.

120 *Id.*

distress, Plaintiffs' request for declaratory and injunctive relief, and kidnapping.[121]

**1. Officer Brooks Unreasonably Seized Plaintiffs under the Fourth Amendment**

Plaintiffs contend that Officer Brooks lacked reasonable suspicion of criminal activity to detain them under the Fourth Amendment.[122] Plaintiffs argue that Officer Brooks's justifications for reasonable suspicion of criminal activity are meritless because Durant simply backed up into a parking spot at Key's to pick up Fairley.[123] Plaintiffs also claim that Officer Brooks's subsequent discovery of Durant's outstanding attachments cannot provide the required reasonable suspicion for the initial detention.[124] Accordingly, Plaintiffs conclude that they were unlawfully detained in violation of clearly established law under the Fourth Amendment.[125]

**2. Officer Brooks's Use of Force was Excessive and Unreasonable under the Fourth Amendment**

Plaintiffs assert that the standard for an excessive force claim under the Fourth Amendment was clearly established decades before the investigatory stop in this case.[126] According to Plaintiffs, the "reasonableness of a police officer's use of force requires assessing the totality of the circumstances."[127] The relevant circumstances include: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether

[121] Rec. Doc. 22.

[122] *Id.* at 11.

[123] *Id.*

[124] *Id.*

[125] *Id.*

[126] *Id.* at 4–5.

[127] *Id.* at 4.

he is actively resisting arrest or attempting to evade arrest by flight."[128]

First, Plaintiffs contend "it is undisputed that Durant had committed no crime when [Officers] Brooks and Kraly punched and kicked him."[129] Second, Plaintiffs contend that Officer Brooks does not suggest Durant—who was handcuffed and placed in a police vehicle—posed an immediate threat to any person's safety.[130] Third, Plaintiffs contend that Durant was not "actively resisting arrest or attempting to escape when [Officers] Brooks and Kraly punched and kicked him."[131]

Plaintiffs concede that an excessive force claim requires the plaintiff's resulting injury to "be more than a *de minimis* physical injury."[132] Plaintiffs claim that Durant suffered ongoing physical pain, rib soreness, bruising, and psychological injuries from Officer Brooks and Officer Kraly's alleged punching and kicking.[133] Plaintiffs also note that excessive force under the Fourth Amendment constitutes battery under Louisiana law.[134]

**3. Officer Brooks is Liable under Section 1983's Bystander-liability Doctrine**

Durant contends that Officer Brooks did not take reasonable measures to protect him from Officer Kraly's alleged excessive force.[135] Durant argues that an issue of material fact exists concerning whether Officer Brooks "could have and should have intervened to stop [Officer]

---

[128] *Id.*

[129] *Id.* at 5.

[130] *Id.*

[131] *Id.*

[132] *Id.*

[133] *See id.* at 7; *see also* Rec. Doc. 34-1 at 2; Rec. Doc. 19-4 at 73–79.

[134] Rec. Doc. 22 at 6.

[135] *Id.*

Kraly's use of force."[136]

#### 4. Officer Brooks Retaliated against Durant's First Amendment Activity

Durant contends that citizens have a clearly established right to record a police officer's official activity under the First Amendment.[137] Durant claims that he must demonstrate the following three elements to prevail on a retaliation claim under the First Amendment:

> [Durant] was engaged in constitutionally protected activity, (2) the officers' action caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the officers' adverse actions were substantially motivated against [Durant's] exercise of constitutionally protected conduct.[138]

First, Durant argues that his recording of the officers entailed constitutionally protected activity.[139] Second, Durant argues that Officer Brooks's actions—an unlawful seizure of Durant's cell phone accompanied by a physical beating—would chill a person of ordinary firmness from engaging in First Amendment activity.[140] Finally, Durant argues that Officer Brooks was substantially motivated against Durant's First Amendment activity, that is, recording Officer Brooks's official police activities.[141]

#### 5. Officer Brooks Maliciously Prosecuted Durant under Louisiana Law

Durant argues that the six required elements for a malicious prosecution claim under Louisiana law are satisfied here.[142] The six elements of a malicious prosecution claim under

---

[136] *Id.*

[137] *Id.* at 8.

[138] *Id.* at 7.

[139] *Id.* at 8.

[140] *Id.*

[141] *Id.* at 8–9.

[142] *Id.* at 12.

Louisiana law are: (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages.[143]

Durant argues that elements one and two are satisfied because "it is undisputed that [Officer] Brooks commenced criminal proceedings against Durant by accusing him of [violating Ordinance 16-66.1]."[144] Durant argues that element three is satisfied because the prosecutor dismissed Durant's charge for threatening a public official.[145] According to Durant, the Louisiana Supreme Court recently held that a *nolle prosequi* satisfies element three except in limited circumstances.[146]

Durant, turning to element four, argues that "probable cause to believe an individual committed one crime . . . does not foreclose a malicious prosecution claim for additionally prosecuting the individual on a separate charge."[147] Durant claims that his outstanding attachments—on unrelated traffic tickets—did not provide probable cause to prosecute Durant for threatening a public official.[148] Moreover, Durant notes that the dismissal of criminal charges gives rise to the presumption that elements four (absence of probable cause) and elements five (presence of malice) are satisfied under Louisiana law.[149] Durant, pointing to that presumption,

---

[143] *Miller v. E. Baton Rouge Par. Sheriff's Dep't*, 511 So. 2d 446, 452 (La. 1987).

[144] Rec. Doc. 22 at 12.

[145] *Id.*

[146] *Id.*

[147] *Id.* at 11.

[148] *See id.*

[149] *Id.* at 14.

concludes that elements four and five are met.[150]

Finally, element six (damages) "is presumed when the other elements of a suit for malicious prosecution are satisfied."[151] Durant contends that all other elements of his malicious prosecution claim have been satisfied for the reasons stated above.[152] Therefore, Durant concludes that damages are presumed in this case.[153]

**6. Officer Brooks Maliciously Prosecuted Durant under Section 1983**

Durant brings a malicious prosecution claim against Officer Brooks under Section 1983.[154] Durant concedes that no federal constitutional claim exists premised solely on the tort of malicious prosecution.[155] Yet he argues that "the Fifth Circuit recognizes a federal law cause of action for what is effectively malicious prosecution when the initiation of criminal charges without probable cause sets in force events that run afoul of explicit constitutional protection[s]."[156] Durant claims that he expressly invoked Fourth and Fourteenth Amendment violations against Officer Brooks for arresting and maliciously prosecuting him in connection with Ordinance 16-66.1.[157]

---

[150] *Id.*

[151] *Id.*

[152] *Id.*

[153] *Id.*

[154] Rec. Doc. 1 at 9.

[155] Rec. Doc. 22 at 14.

[156] *Id.*

[157] *Id.* at 16.

### 7. Gretna and Chief Lawson are liable for Officer Brooks's Alleged State Torts under Louisiana Law

Plaintiffs argue that Gretna and Chief Lawson are liable under Louisiana Civil Code article 2320 for Officer Brooks's alleged state law torts.[158] It is allegedly undisputed that Officer Brooks was working in the course and scope of his employment as a Gretna Police Officer when he detained Plaintiffs.[159] It is also allegedly undisputed that Gretna and Chief Lawson are vicariously liable for any potential state torts committed by Officer Brooks.[160] Defendants contend that Officer Brooks did not commit any state law torts and therefore cannot be held vicariously liable for any state law torts.[161] Yet Plaintiffs dispute whether Officer Brooks committed torts under Louisiana law.[162] Plaintiffs therefore conclude that Gretna and Chief Lawson are not entitled to summary judgment on Plaintiffs' claims under Louisiana Civil Code article 2320.[163]

### 8. Gretna and Chief Lawson are Liable under *Monell* for Gretna Ordinance 16-66.1

Durant argues that Gretna and Chief Lawson are liable to him under *Monell v. Department of Social Services* and its progeny.[164] Durant contends, under *Monell*, "municipal liability for constitutional torts arises when the execution of an official policy causes the plaintiff's injury."[165] Durant further contends that a "single unconstitutional action is sufficient to impose municipal

---

[158] *Id.* at 17.

[159] *Id.*

[160] *Id.*

[161] *Id.* (citing Rec. Doc. 19-1 at 49).

[162] *Id.* at 17–18.

[163] *Id.* at 18.

[164] *Id.* at 19.

[165] *Id.* at 18.

liability if undertaken by the municipal official or entity possessing final policymaking authority for the action in question."[166]

Here, Defendants concede that the former version of Gretna City Ordinance 16-66.1 is incompatible with the Fifth Circuit's recent decision in *Seals v. McBee*.[167] Thus, because Ordinance 16-66.1 was purportedly the moving force for the Ordinance 16-66.1 charge against Durant, he concludes that Gretna and Chief Lawson are liable as a matter of law.[168]

### *C. Defendants' Reply in Opposition to Plaintiffs' Opposition*

#### 1. Plaintiffs Relied on Incompetent Summary Judgment Evidence

Defendants argue that Plaintiffs submitted unsworn declarations to support their opposition brief.[169] Defendants contend that, under 28 U.S.C. § 1746, an unsworn declaration must be pledged as true and correct under the penalty of perjury, and dated, in substantially the following form: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct."[170] Defendants claim that Durant and Fairley's unsworn declarations affirm the statements in the declarations are made "under penalty of perjury," but they do not affirm their statements are "true and correct."[171] Accordingly, Defendants conclude that Durant and Fairley's unsworn declarations cannot be considered at the summary judgment stage.[172]

---

[166] *Id.* (internal quotations marks and citation omitted)

[167] Rec. Doc. 25-2 at 15.

[168] Rec. Doc. 22 at 19.

[169] Rec. Doc. 25-2 at 2.

[170] *Id.*

[171] *Id.* at 3.

[172] *Id.* at 4.

### 2. Plaintiffs' Unsworn Declarations Contradict their Sworn Deposition Testimony

Defendants argues that Fifth Circuit precedent "does not allow a party to defeat a motion for summary judgment by using an affidavit that impeaches, without explanation, sworn testimony."[173] Defendants contend that Plaintiffs' subsequent declarations contradict and impeach their prior deposition testimony.[174]

First, Defendants claim that Durant originally testified in his deposition that Officer Kraly—not Officer Brooks—opened the police unit's door and punched Durant several times in the ribs.[175] Defendants also claim that, during Durant's deposition, he stated that Officer Brooks "put his foot" on him while closing the police unit's door.[176] Yet, in Durant's declaration, he allegedly stated that both Officer Kraly and Officer Brooks "started punching and kicking [him] while [he] was handcuffed in the back seat [of the police vehicle]."[177] Defendants conclude that Durant's contradictory statements cannot defeat their motion for summary judgment.[178]

Second, Defendants claim that Fairley originally testified during her deposition that—besides observing Officer Brooks tussle with Durant to obtain his cell phone—she did not observe Officer Brooks take any other action against Durant.[179] Yet, in Fairley's declaration, she allegedly

[173] *Id.* at 7.

[174] *Id.* at 8.

[175] *Id.* at 6.

[176] *Id.*

[177] *Id.*

[178] *Id.* at 8.

[179] *Id.* at 7.

stated that Officer Brooks punched Durant and took Durant's cell phone with force.[180] Defendants conclude that Fairley's contradictory statements cannot defeat their motion for summary judgment.[181]

**3. Plaintiffs were not Unlawfully Seized or Arrested**

Defendants repeat several arguments in their reply brief regarding whether Officer Brooks had reasonable suspicion to detain Plaintiffs.[182] Defendants point out that Plaintiffs' argument, that Plaintiffs' activities at Key's Fuel Mart were consistent with their daily activities, is irrelevant because Officer Brooks was unaware of Plaintiffs' daily activities.[183]

**4. Officer Brooks did not Retaliate against Durant's First Amendment Activity**

Defendants argue that Plaintiffs' opposition brief completely ignores Durant's seven outstanding attachments when arguing that Officer Brooks retaliated against Durant's First Amendment activity.[184] Defendants contend that when probable cause exists to arrest a person, arguments that the arrestee's speech motivated the arrest must fail no matter how clearly the party's speech is protected under the First Amendment.[185] Defendants claim that probable cause existed to arrest Durant because Durant had outstanding attachments.[186]

**5. Officer Brooks did not Maliciously Prosecute Durant**

Defendants argue that Durant's malicious prosecution claim against Officer Brooks must

---

[180] *Id.* at 6–7.

[181] *Id.* at 8.

[182] *Id.* at 11.

[183] *Id.* at 13.

[184] *Id.* at 9.

[185] *Id.* at 10.

[186] *Id.*

fail for two reasons. First, Defendants argue that Durant's Ordinance 16-66.1 charge—the basis for his malicious prosecution claim—did not result in a "bona fide" termination in favor of Durant because the Ordinance 16-66.1 charge was dismissed when Durant pleaded guilty to multiple unrelated traffic charges in Gretna and Jefferson Parish.[187] Second, Defendants argue that Officer Brooks had probable cause to arrest Durant due to the multiple outstanding attachments.[188]

### 6. Gretna and Chief Lawson are not Liable under *Monell* for Gretna Ordinance 16-66.1

Defendants concede that Ordinance 16.66.1 was effectively rendered unconstitutional by the Fifth Circuit in *Seals v. McBee*.[189] Yet, on August 14, 2019, the Gretna City Council allegedly cured Ordinance 16.66.1's constitutional defect with an amendment.[190] Defendants argue that Durant was initially arrested because of his multiple outstanding attachments—not violating Ordinance 16.66-1.[191] Accordingly, Defendants argue that Durant's Ordinance 16-66.1 charge was not the "moving force" behind Durant's arrest, and Durant was not harmed by his arrest under Ordinance 16-66.1.[192] Moreover, Defendants note that the Fifth Circuit's decision, *Seals v. McBee*, had not yet been rendered at the time of Durant's arrest.[193] Defendants conclude that neither Chief Lawson nor Gretna have any liability for Officer Brooks's enforcement of

[187] *Id.*

[188] *Id.*

[189] *Id.* at 15.

[190] *Id.*

[191] *Id.*

[192] *Id.*

[193] *Id.* at 16.

Ordinance 16-66.1.[194]

### *D. Plaintiffs' Sur-Reply in Opposition of Defendants' Reply Brief*

#### 1. Plaintiffs' Declarations are Competent Summary Judgment Evidence

Plaintiffs contend that their declarations are competent summary judgment evidence.[195] Nevertheless, Plaintiffs submit amended declarations, in which both Plaintiffs recite that the facts contained in their declarations are made under the penalty of perjury and are true and correct.[196] Plaintiffs claim that their amended declarations are competent summary judgment evidence in accordance with 28 U.S.C. § 1746.[197]

Second, Plaintiffs argue that their declarations are consistent with their prior deposition testimony.[198] Plaintiffs quote several passages of their deposition testimony to demonstrate that, at maximum, their declarations supplement their prior deposition testimony.[199] Plaintiffs explain that a declaration clarifying or amplifying prior testimony with greater detail or additional facts does not contradict prior testimony under Fifth Circuit precedent.[200]

#### 2. Officer Brooks did not have Reasonable Suspicion to Detain Plaintiffs at the Inception of the Detention

Plaintiffs argue that "[t]here is no undisputed evidence on which the jury could find that

---

[194] *Id.*

[195] Rec. Doc. 34 at 1.

[196] *Id.* at 2; *see also* Rec. Doc. 34-1; Rec. Doc. 34-2.

[197] Rec. Doc. 34 at 2.

[198] *Id.* at 4.

[199] *Id.* at 4–7.

[200] *Id.* at 7.

Brooks had reasonable suspicion to detain [Plaintiffs]."[201] Plaintiffs note that Officer Brooks testified in his deposition: "When the vehicle seen [sic] me that Mr. Durant was driving, he threw the car in reverse, parked, and turned the lights off" after 9:00 p.m.[202] Plaintiffs respond by noting that Durant's testimony "is not that he was exiting the parking lot and reversed when he saw [Officer] Brooks, but that he arrived 15 to 20 minutes before Fairley got off work [at 9:00 p.m.] and backed into a parking space [at Key's] to wait for her."[203] Plaintiffs contend "[t]he jury is not required to believe [Officer] Brooks when it may just as readily believe Durant."[204] Finally, for the first time in this litigation, Plaintiffs contend Officer Brooks did not have reasonable suspicion that Plaintiffs were armed and dangerous and, therefore, did not lawfully frisk Plaintiffs.[205]

**3. Gretna is liable under *Monell* for Gretna Ordinance 16-66.1**

Defendants claim that Ordinance 16-66.1 "was not the 'moving force behind Durant's arrest as alleged by the plaintiffs."[206] Durant contends that Defendants misunderstand his allegation.[207] Instead, Durant alleges that Gretna Ordinance 16-66.1 "was the moving force behind [Officer] Brooks's initiation of charges against Durant for threatening a public official."[208]

**4. Officer Brooks Maliciously Prosecuted Durant under Louisiana Law**

Durant contends that "the probable cause inquiry for malicious prosecution is not the same

---

[201] *Id.* at 11.

[202] *Id.* at 12 (quoting Rec. Doc. 22-3 at 29).

[203] *Id.*

[204] *Id.*

[205] *Id.* at 13.

[206] *Id.* at 9 (citing Rec. Doc. 25 at 15).

[207] *Id.*

[208] *Id.* at 9–10.

as the probable cause inquiry for arrest."[209] Durant quotes the Fifth Circuit's unpublished opinion in *Lemoine v. Wolfe*: "an arrest warrant is not a cloak of invulnerability for a complainant in a malicious prosecution case."[210] The Fifth Circuit also stated: "[i]f the existence of an arrest warrant immunized a wrongful complainant then there would be extremely few viable malicious prosecution cases."[211] The Fifth Circuit noted that "[t]he issuance of the arrest warrant, by itself, is insufficient to rebut the Louisiana presumption that there was not probable cause."[212] Durant concludes that "whether [Officer] Brooks had probable cause to arrest Durant for attachments related to traffic tickets or for any other reason is not material to whether he had probable cause to accuse Durant of threatening him [under Ordinance 16-66.1]."[213]

#### 5. Officer Brooks and Officer Kraly Conspired to Seize Durant's Cell Phone by Force

Plaintiffs argue that Officer Brooks and Officer Kraly "seized Durant's phone by force to prevent Durant from recording their conduct and battered Durant in order to do so."[214] Plaintiffs argue the elements for a conspiracy under Section 1983 and Louisiana law are met here because Plaintiffs have identified conspirators and conspiratorial conduct—Officer Brooks and Officer Kraly's warrantless seizure of Durant's cell phone with unreasonable force and First Amendment retaliation.[215]

---

[209] *Id.* at 10.

[210] *Id.* (quoting *Lemoine v. Wolfe*, 575 F. App'x 449, 458 (5th Cir. 2014)).

[211] *Id.* (quoting *Lemoine*, 575 F. App'x at 458).

[212] *Id.* (quoting *Lemoine*, 575 F. App'x at 458).

[213] *Id.*

[214] *Id.* at 8.

[215] *Id.* at 9.

### *E. Defendants' Supplemental Reply in Opposition to Plaintiffs' Sur-reply*

Defendants make three principal arguments in opposition to Plaintiffs' sur-reply.[216] First, Defendants argue that Plaintiffs' recent declarations contradict their prior deposition testimony.[217] Defendants quote several passages of Plaintiffs' deposition testimony to demonstrate the contradictions in their subsequent declarations.[218] Defendants point out that a party cannot "defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." [219]

Second, with respect to Plaintiffs' excessive force claims, Defendants argue that this Court must evaluate Officer Brooks and Officer Kraly's actions separately when determining whether Officer Brooks's actions caused Plaintiffs' purported injuries.[220] Specifically, Defendants argue that Plaintiffs "must prove that each of them sustained an injury from which resulted directly and only from the force applied by [Officer Brooks] which was objectively unreasonable."[221] Defendants point out that Plaintiffs routinely allege that "Brooks and Kraly" committed an action against them.[222] Therefore, Defendants conclude that "[P]laintiffs have failed to distinguish between the alleged actions of [Officer] Brooks from those of [Officer] Kraly."[223]

Finally, Defendants respond to Plaintiffs' allegation that Officer Brooks never investigated

[216] Rec. Doc. 37.

[217] *Id.* at 2.

[218] *Id.* at 3–6.

[219] *Id.* at 2.

[220] *Id.* at 8.

[221] *Id.* at 9.

[222] *Id.*

[223] *Id.*

Plaintiffs once he stopped them.[224] Defendants claims that Officer Brooks "ran Durant's vehicle in the national database because it did not have a license plate."[225] Defendants also claim that Officer Brooks "checked both Fairley and Durant via the criminal databases and that he also checked the VIN# of the vehicle in his computer system."[226]

## III. Legal Standard

### *A. Legal Standard for Summary Judgment*

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[227] To decide whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[228] All reasonable inferences are drawn in favor of the nonmoving party. Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[229] If the entire record "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a matter of law.[230] The nonmoving party may not rest upon the pleadings.[231] Instead,

---

[224] *Id.* at 10.

[225] *Id.*

[226] *Id.*

[227] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[228] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[229] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[230] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[231] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

the nonmoving party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[232]

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[233] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[234] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and to articulate" precisely how that evidence supports the nonmoving party's claims.[235] The nonmoving party must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[236]

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[237] Moreover,

---

[232] *See id.*; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[233] *Celotex*, 477 U.S. at 323.

[234] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (quoting *Little v. Liquid Air Corp.*, 939 F.2d 1293, 1299 (5th Cir. 1991)).

[235] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[236] *Morris*, 144 F.3d at 380; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[237] *Little*, 37 F.3d at 1075 (internal citations omitted).

the nonmoving party may not rest upon mere allegations or denials in its pleadings.[238] Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.

***B. Legal Standard for Qualified Immunity***

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[239] Qualified immunity is an "immunity from suit rather than a mere defense to liability."[240] In this manner, "[o]ne of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive."[241] Once a defendant invokes the defense of qualified immunity, the plaintiff carries the burden of demonstrating its inapplicability.[242]

The Supreme Court, in *Saucier v. Katz*, set forth a two-part framework for analyzing whether a defendant is entitled to qualified immunity.[243] The Court does not have to address these two questions sequentially; it can proceed with either inquiry first.[244] Part one asks the following question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged

---

[238] *Morris*, 144 F.3d at 380.

[239] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[240] *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

[241] *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

[242] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).

[243] *Saucier v. Katz*, 533 U.S. 194 (2001).

[244] *See Pearson*, 555 U.S. at 236 ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."); *see also Cutler v. Stephen F. Austin State Univ*., 767 F.3d 462, 469 (5th Cir. 2014).

show the officer's conduct violated a constitutional right?"[245] Part two inquires whether the allegedly violated right is "clearly established" in that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[246]

When deciding whether the right allegedly violated was "clearly established," the Court asks whether the law so clearly and unambiguously prohibited the conduct such that a reasonable official would understand that what he was doing violated the law.[247] "Answering in the affirmative requires the court to be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity. This requirement establishes a high bar."[248] When there is no controlling authority specifically prohibiting a defendant's conduct, the law is not clearly established for the purposes of defeating qualified immunity.[249]

"If the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were 'objectively reasonable' in light of 'law which was clearly established at the time of the disputed action.'"[250] "[L]aw enforcement officers who reasonably but mistakenly commit a constitutional violation are entitled to immunity."[251] "Whether an official's conduct was objectively reasonable

---

[245] *Saucier*, 533 U.S. at 201.

[246] *Id.* at 202.

[247] *May v. Strain*, 55 F.Supp.3d 885, 897 (E.D. La. 2014) (Brown, J.) (citing *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2014)).

[248] *Id.* (quoting *Wyatt*, 718 F.3d at 503 (5th Cir. 2014)).

[249] *Id.* (citing *Wyatt*, 718 F.3d at 503 (5th Cir. 2014)).

[250] *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (quoting *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004)).

[251] *Collins*, 382 F.3d at 537 (quoting *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 488 (5th Cir.

is a question of law for the court, not a matter of fact for the jury."[252]

## IV. Law and Analysis

### *A. Whether Defendants are Entitled to Summary Judgment on Plaintiffs' Section 1983 Claims*

To bring a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) the defendant violated federal law and (2) the defendant was acting under the color of state law while doing so. Section 1983 reads, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .[253]

Here, Plaintiffs both bring the following claims against Officer Brooks under Section 1983: an illegal seizure under the Fourth Amendment, excessive force under the Fourth Amendment, and bystander-liability.[254] Durant alone brings claims against Officer Brooks under Section 1983 for malicious prosecution in connection with the Fourth Amendment and retaliation against First Amendment activity.[255] Finally, Durant alone brings a *Monell* claim under Section 1983 against Gretna and Chief Lawson for violating his First Amendment rights by enacting and enforcing Ordinance 16-66.1.[256] This Court will consider each claim in turn.

---

2001)).

[252] *Brown*, 623 F.3d at 253.

[253] 42 U.S.C. § 1983.

[254] Rec. Doc. 1 at 7–8, 11–12.

[255] *Id.* at 9–10.

[256] *Id.* at 15–16.

### 1. Whether Officer Brooks is entitled to Summary Judgment on Plaintiffs' Unreasonable Seizure Claims under the Fourth Amendment

Defendants argue that Officer Brooks had reasonable suspicion of criminal activity to detain Plaintiffs under the Fourth Amendment.[257] Defendants also argue that Officer Brooks is entitled to qualified immunity from Plaintiffs' Fourth Amendment claims.[258] On the other hand, Plaintiffs argue that Officer Brooks violated clearly established law under the Fourth Amendment because he seized Plaintiffs without reasonable suspicion of criminal activity.[259]

The Fourth Amendment permits "police officers [to] stop and briefly detain an individual for investigative purposes if they have reasonable suspicion that criminal activity is afoot."[260] Reasonable suspicion requires the police officer "to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."[261] Reasonable suspicion "requires more than merely an unparticularized hunch, but considerably less than proof of wrongdoing by a preponderance of the evidence."[262]

To overcome Officer Brooks's qualified immunity defense, Plaintiffs must satisfy their burden on both prongs of the qualified immunity test. First, viewing the evidence in the light most favorable to Plaintiffs, they must demonstrate that a genuine dispute of material fact exists regarding whether Officer Brooks's investigatory stop violated the Fourth Amendment. Second, Plaintiffs must demonstrate that Officer Brooks's investigatory stop was objectively unreasonable

---

[257] Rec. Doc. 19-1 at 8–16.

[258] *Id.*

[259] Rec. Doc. 22 at 9–11.

[260] *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000).

[261] *United States v. Rodriguez*, 564 F.3d 735, 741 (5th Cir. 2009) (quoting *Terry v. Ohio*, 392 U.S. 1, 88 (1968)).

[262] *Id.* (quoting *United States v. Gonzalez*, 190 F.3d 668, 671 (5th Cir. 1999)).

in light of clearly established law.

Here, under the first prong, the undisputed evidence demonstrates that Officer Brooks drove toward Key's and observed multiple individuals communicating around two vehicles in Key's parking lot—while all of the lights over Key's gasoline pumps were turned off.[263] When Officer Brooks drove closer to Key's, he observed Plaintiffs start to exit Key's parking lot.[264] Yet, when Plaintiffs spotted Officer Brooks's police vehicle, they "threw [their] car in reverse before the car could even settle," backed up into a parking spot at Key's, and turned their vehicle's headlights off.[265] Durant admitted that he became "scared and nervous" and "didn't leave out [Key's] parking lot right away" because other police officers had just followed his cousin's vehicle when exiting Key's parking lot.[266]

The undisputed evidence also demonstrates that Officer Brooks made a U-turn after noticing Plaintiffs' immediate reversal.[267] Officer Brooks subsequently observed Plaintiffs quickly depart Key's parking lot and eventually turn into a Walmart parking lot.[268] Yet, instead of parking their vehicle at Walmart and entering the store, Plaintiffs drove through Walmart's parking lot "at a good rate of speed"—just to immediately exit Walmart's parking lot.[269] Plaintiffs

---

[263] Rec. Doc. 19-3 at 30–31. Durant admitted that his cousin's vehicle was at Key's on the night in question. Plaintiffs do not point to any evidence to show the lights over Key's gasoline pumps were turned off.

[264] *Id.* at 32; *see also supra* note 6.

[265] *Id.* at 29; *see also supra* note 6.

[266] Rec. Doc. 19-4 at 12.

[267] Rec. Doc. 19-3 at 66. Plaintiffs do not point to any evidence to dispute that Officer Brooks conducted a U-turn.

[268] *Id.* at 68. Plaintiffs do not point to any evidence to dispute that they entered Walmart's parking lot. Plaintiffs also do not point to any evidence to dispute the manner in which Durant drove the vehicle, including how quickly he accelerated through Walmart's parking lot..

[269] *Id.* Plaintiffs do not point to any evidence to dispute that they entered Walmart's parking lot. Plaintiffs also do not point to any evidence to dispute the manner in which Durant drove the vehicle, including how

then parked on Richard Street near the Walmart in question and started walking away from the vehicle until Officer Brooks detained them.[270]

Considering those undisputed facts, the Court must determine the reasonableness of Officer Brooks's investigatory stop by examining "whether the officer's action of stopping the vehicle was justified at its inception" and "whether the officer's actions were reasonably related in scope to the circumstances that justified the stop."[271] The parties here largely focus on whether Officer Brooks had reasonable suspicion to detain Plaintiffs in the first place. Courts must consider the totality of the circumstances when determining whether an officer had reasonable suspicion to stop an individual.[272] Multiple factors may be relevant for determining reasonable suspicion.[273] For example, courts have routinely considered the following factors: (1) whether the individual appeared nervous or made furtive gestures or suspicious movements,[274] (2) whether the individual engaged in "unprovoked flight upon noticing the police,"[275] and (3) whether the investigatory stop occurred in a high crime area.[276]

There is undisputed evidence in the record indicating that Plaintiffs appeared nervous or made suspicious movements, which supports finding that Officer Brooks had reasonable

---

quickly he accelerated through Walmart's parking lot.

270 Rec. Doc. 19-4 at 22. Defendants agree that Plaintiffs were walking down Richard Street when Officer Brooks detained them.

271 *United States v. Rains*, 615 F.3d 589, 594 (5th Cir.2010) (internal citation omitted).

272 *United States v. Sokolow,* 490 U.S. 1, 8 (1989) (internal citation omitted).

273 *United States v. Ledet*, 385 F. App'x 392, 394 (5th Cir. 2010); *see also United States v. Hill*, 752 F.3d 1029, 1034 (5th Cir. 2014).

274 *United States v. Watson*, 953 F.2d 895, 897 (5th Cir. 1992).

275 *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000); *see also Alexander v. City of Round Rock*, 854 F.3d 298, 304 (5th Cir. 2017).

276 *Wardlow*, 528 U.S. at 124.

suspicion to conduct an investigatory stop. Plaintiffs, while exiting a gasoline station at night with all of the lights over the gasoline pumps turned off, abruptly threw their car in reverse before the car could settle, backed up into a parking spot, and turned their vehicle's headlights off—all once spotting a police vehicle.[277] Those actions indicate nervous and suspicious movements. Durant admitted that he was "scared and nervous" and "didn't leave out [Key's] parking lot right away" when noticing police officers near Key's.[278]

Second, with respect to the unprovoked flight factor, the Supreme Court has distinguished a person's unprovoked flight from a person ignoring the police to "go about his business."[279] A person's unprovoked flight is "certainly suggestive" of criminal wrongdoing, but a person "going about his business" is not indicative of wrongdoing.[280] "[C]ircumstances that could equally be interpreted as flight from officers or as continuation of previously-undertaken actions do not create reasonable suspicion."[281]

Plaintiffs point to *Alexander v. City of Rock* to support their argument that Plaintiffs were simply "going about [their] business."[282] In *Alexander*, the Fifth Circuit reversed a district court's decision granting a motion to dismiss the plaintiff's unlawful detention claim.[283] In the complaint, the plaintiff alleged that he drove his vehicle into a hotel's parking lot and observed a stray cat.[284]

---

[277] Rec. Doc. 19-3 at 29; *see also supra* note 6.

[278] Rec. Doc. 19-4 at 12.

[279] *Wardlow*, 528 U.S. at 124.

[280] *Id.*

[281] *Alexander*, 854 F.3d at 304.

[282] Rec. Doc. 22 at 9.

[283] *Alexander*, 854 F.3d at 303–05.

[284] *Id.* at 301.

The plaintiff allegedly stopped his vehicle, exited, and peered into nearby grass to locate the stray cat.[285] According to the complaint, the plaintiff, not having any luck finding the stray cat, noticed a police vehicle in the hotel's parking lot and continued to enter his vehicle to drive closer to his hotel room.[286] A police officer, observing the plaintiff's actions, activated his emergency lights and stopped the plaintiff's vehicle.[287]

The Fifth Circuit, accepting the complaint's allegations as true, found that it could not conclude as a matter of law that the police officer had reasonable suspicion to detain the plaintiff.[288] The court noted that, at maximum, the police officer observed the plaintiff "briefly looking around a vehicle in the parking lot, turning to get into a car, noticing a police car, continuing to get into the car, and beginning to drive further into the parking lot."[289] The Fifth Circuit found nothing in the complaint to conclude that the plaintiff "appeared to flee" because the plaintiff alleged that he "was already getting into the car before he looked up and noticed [the officer's] police vehicle."[290] The Fifth Circuit also considered the fact that nothing in the plaintiff's complaint indicated whether the "parking lot was dark or well-lit."[291] The Fifth Circuit concluded that the plaintiff's allegations in the complaint indicated that he was simply "go[ing] about his business."[292] Accordingly, the Fifth Circuit found that the police officer's lack of

---

[285] *Id.*

[286] *Id.*

[287] *Id.*

[288] *Id.* at 305.

[289] *Id.*

[290] *Id.*

[291] *Id.*

[292] *Id.*

reasonable suspicion was clearly established by the facts alleged in the complaint when accepted as true.[293]

This case, unlike *Alexander*, is considered at the summary judgment stage. Additionally, this case is distinguishable from *Alexander* for several key reasons. First, as previously noted, the plaintiff in *Alexander* alleged that he "briefly look[ed] around a vehicle in the parking lot, turn[ed] to get into a car, notic[ed] a police car, [and] continu[ed] to get into the car."[294] Yet, in this case, Plaintiffs "threw [their] car in reverse before the car could even settle," backed up into a parking spot, and turned their vehicle's headlights off at a poorly illuminated gasoline station— all once spotting police officers.[295] Plaintiffs do not present any evidence to dispute this assertion. Second, unlike the plaintiff in *Alexander* who simply continued driving in the parking lot and did not appear to flee, the undisputed evidence demonstrates that Plaintiffs here quickly exited Key's parking lot, turned into Walmart's parking lot, and accelerated through Walmart's parking lot at "a good rate of speed"—just to immediately exit Walmart's parking lot.[296] Once again, Plaintiffs do not present any evidence to dispute this assertion. Officer Brooks testified in his deposition that he thought Plaintiffs were attempting to evade him by entering Walmart's parking lot and driving through the parking lot at a "good rate of speed."[297] A reasonable officer could interpret those actions as unprovoked flight. Third, unlike *Alexander*, the undisputed evidence

[293] *Id.*

[294] *Id.*

[295] Rec. Doc. 19-3 at 29; *see also supra* note 6.

[296] *Id.* at 68. Plaintiffs do not point to any evidence to dispute that they entered Walmart's parking lot. Plaintiffs also do not point to any evidence to dispute the manner in which Durant drove the vehicle, including how quickly he accelerated through Walmart's parking lot.

[297] *Id.* at 67.

demonstrates that the lights over Key's gasoline pumps were turned off.[298] For these reasons, the unprovoked flight factor weighs in favor of Officer Brooks having reasonable suspicion to conduct an investigatory stop.

Finally, with respect to the high-crime area factor, the parties agree that Key's is not located in a high-crime area.[299] Therefore, this factor weighs in favor of finding that Officer Brooks lacked reasonable suspicion to conduct an investigatory stop. Considering these three factors, in addition to the totality of the circumstances surrounding the investigatory stop, Officer Brooks had reasonable suspicion to conduct an investigatory stop.

Plaintiffs' argument, regarding their "unreasonable seizure" claim under the Fourth Amendment, largely focuses on whether Officer Brooks's had reasonable suspicion to detain Plaintiffs at the inception of the investigatory stop.[300] Plaintiffs do not thoroughly articulate whether their "unreasonable seizure" claim under the Fourth Amendment includes a false arrest or false imprisonment claim under Section 1983.[301] Nevertheless, assuming Plaintiffs bring such claims under Section 1983, Plaintiffs do not meet their burden to rebut Officer Brooks's qualified immunity defense. Indeed, Fairley does not argue, or point to evidence demonstrating, that her detention escalated into an arrest requiring probable cause.[302] At the summary judgment stage, Fairley must "identify specific evidence in the record, and articulate" precisely how that evidence

---

[298] *Id.* at 30. Plaintiffs do not point to any evidence to show the lights over Key's gasoline pumps were turned off.

[299] Rec. Doc. 22-3 at 35.

[300] Rec. Doc. 22 at 9–11; Rec. Doc. 34 at 11–13.

[301] Rec. Doc. 22 at 9–11; Rec. Doc. 34 at 11–13.

[302] Rec. Doc. 22 at 9–11; Rec. Doc. 34 at 11–13.

supports any claim.[303]

Moreover, Durant does not argue, or point to evidence demonstrating, that Officer Brooks's seizure escalated into an arrest before Officer Brooks discovered Durant's outstanding attachments.[304] Durant also does not point to evidence to dispute that he had multiple outstanding valid attachments when Officer Brooks arrested him.[305] Undisputed evidence that an arrest was effectuated pursuant to a valid outstanding warrant forecloses a Section 1983 claim for false arrest or false imprisonment.[306]

For those reasons, Plaintiffs do not meet their burden under the first prong of the qualified immunity analysis. Officer Brooks is entitled to summary judgment on Plaintiffs' "unreasonable seizure" claim under the Fourth Amendment.

**2. Whether Officer Brooks is Entitled to Summary Judgment on Plaintiffs' Excessive Force Claims under the Fourth Amendment**

Defendants contend that summary judgment is appropriate on Plaintiffs' excessive force claims against Officer Brooks.[307] Under Fifth Circuit precedent, "[w]hen a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures."[308] Whether a police officer's use of force is excessive or unreasonable depends on "the facts and circumstances of each particular case."[309]

---

[303] *Forsyth*, 19 F.3d at 1537.

[304] Rec. Doc. 22 at 9–11; Rec. Doc. 34 at 11–13.

[305] Rec. Doc. 22 at 9–11; Rec. Doc. 34 at 11–13.

[306] *See Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995) ("If there was probable cause for any of the charges made . . . then the arrest was supported by probable cause, and the claim for false arrest fails.").

[307] Rec. Doc. 19-1 at 23–40.

[308] *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

[309] *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (quoting *Graham*, 490 U.S. at 396).

To prevail on an excessive force claim, a plaintiff must demonstrate the following three elements:

> (1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable.[310]

To overcome Officer Brooks's qualified immunity defense, Plaintiffs must satisfy their burden on both prongs of the qualified immunity test. First, viewing the evidence in the light most favorable to Plaintiffs, they must demonstrate that a genuine dispute of material fact exists concerning whether plaintiff endured excessive force. Second, Plaintiffs must demonstrate that Officer Brooks's detention was objectively unreasonable in light of clearly established law.[311] This Court will now analyze whether Durant or Fairley satisfy their burden to overcome Officer Brooks's qualified immunity defense.

*a. Durant*

First, the necessary injury to support an excessive force claim "must be more than a de minimis injury and must be evaluated in the context in which the force was deployed."[312] The Fifth Circuit, in 2017, explained that "the extent of injury necessary to satisfy the injury requirement is directly related to the amount of force that is constitutionally permissible under the circumstances."[313] "*Any* force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold, and, conversely, objectively reasonable force will result in *de minimis* injuries only."[314] Consequently, "only one inquiry is required to determine whether an officer

---

310 *Cass v. City of Abilene*, 814 F.3d 721, 731 (5th Cir. 2016) (quoting *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000)) (internal quotation marks omitted).

311 *See Alexander*, 854 F.3d at 303.

312 *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001).

313 *Alexander*, 854 F.3d at 309 (quoting *Brown v. Lynch*, 524 F. App'x. 69, 79 (5th Cir. 2013)) (internal quotation marks omitted).

314 *Id.* To determine the objective reasonableness of an officer's use of force, the Court must pay "careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at

used excessive force in violation of the Fourth Amendment."[315] If the "plaintiff has suffered 'some injury,' even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force."[316]

The Fifth Circuit, in *Alexander v. City of Rock*, illustrated the requirements of the "some injury" test. In *Alexander*, the plaintiff alleged that police officers ordered him to exit his vehicle and he refused.[317] In response, the officers physically pulled the plaintiff out of his vehicle and "pinned him face down onto the ground."[318] One police officer allegedly "pressed a boot or knee on the back of [the plaintiff's] neck as his face was mashed into the concrete."[319] The plaintiff "felt at least three officers on top of this body, manipulating his limbs and putting pressure on his torso, neck, and head."[320] The plaintiff suffered "injuries to his body . . . including injuries to his mouth."[321] Throughout the encounter, the plaintiff alleged that he did not physically resist the officers in any manner.[322] Considering those allegations, the district court granted the police officer's motion to dismiss because the plaintiff did not plead sufficient facts to overcome the *de*

issue, [2] whether the suspect posed an immediate threat to the safety of the officers or others, and [3] whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Tarver v. City of Edna*, 410 F.3d 745, 753 (5th Cir. 2005) (quoting *Gutierrez v. City of San Antonio*, 139 F.3d 441, 447 (5th Cir. 1998)).

[315] *Alexander*, 854 F.3d at 309 (quoting *Ikerd v. Blair*, 101 F.3d 430, 434 n.9 (5th Cir. 1996)).

[316] *Id.* (quoting *Brown*, 524 Fed. Appx. at 79).

[317] *Id.* at 302.

[318] *Id.*

[319] *Id.*

[320] *Id.*

[321] *Id.*

[322] *Id.*

*minimis* injury requirement.[323]

The Fifth Circuit reversed the district court's decision in *Alexander*. First, the Fifth Circuit reasoned that nothing in the plaintiff's "statements or actions indicated that he posed any risk of harm to the officers."[324] Second, the Fifth Circuit reasoned that the plaintiff "did not pose any flight risk" because "he stayed in his vehicle and made [no] attempt to leave while [the police officer] awaited backup."[325] Although the Fifth Circuit admitted that the plaintiff's "refusal to exit his vehicle on [the policer officer's] command [may have] warranted physical removal from the car," the court found that the plaintiff's refusal "did not warrant throwing [the plaintiff] onto the ground, kneeing him in the back, and pushing his face into the concrete."[326] The Fifth Circuit concluded that the officer's use of force was objectively unreasonable and, consequently, the plaintiff's purported "injuries to his body . . . including injuries to his mouth" satisfied the injury requirement for an excessive force claim.[327]

The Fifth Circuit again applied *Alexander*'s "some injury" test in *Sam v. Richard*.[328] In that case, the plaintiff and his friends entered a Walmart and browsed merchandise until one of the plaintiff's friends stole a clothing item.[329] An officer was dispatched to respond to the reported theft.[330] The police officer drove to Walmart, encountered the plaintiff and his friends, and

---

[323] *Id.* at 309.

[324] *Id.*

[325] *Id.*

[326] *Id.*

[327] *Id.*

[328] *Sam v. Richard*, 887 F.3d 710, 713 (5th Cir. 2018).

[329] *Id.* at 712.

[330] *Id.*

activated his police vehicle's emergency lights.[331] The plaintiff and his friends fled from the police officer, but the plaintiff eventually laid face down on the ground and placed his hands on the back of his head.[332] The plaintiff testified that the police officer slapped him across the face, kneed him, placed him in handcuffs, and shoved him against a police car.[333] The police officer's slap did not break the plaintiff's skin, but a scrape against the concrete drew blood from the plaintiff's hip.[334] The plaintiff testified that the incident "didn't mess [him] up physically," but the incident did cause him to bleed on the scene and "left a scab."[335] The plaintiff complained of hip pain,[336] but he also testified that the physical injury "wasn't that serious" and "went away in a few days."[337]

The district court in *Sam* granted summary judgment on the plaintiff's excessive force claim because the plaintiff's injuries were "*de minimis* and insufficient to make out a constitutional violation as a matter of law."[338] Again, the Fifth Circuit reversed the district court's decision regarding the "injury" element.[339] The Fifth Circuit reasoned, although the plaintiff initially fled from the police, the plaintiff "was lying face down on the ground with his hands on his head when

[331] *Id.*

[332] *Id.*

[333] *Id.*

[334] *Id.*

[335] *Id.*

[336] *Id.*

[337] *Sam v. City of Opelousas*, No. CV 16-0124, 2017 WL 2784458, at *3 (W.D. La. June 27, 2017), aff'd in part, vacated in part sub nom. *Sam v. Richard*, 887 F.3d 710 (5th Cir. 2018).

[338] *Id.*

[339] *Sam*, 887 F.3d at 714.

[the police officer] kneed him in the hip and pushed him against a patrol car."[340] "Such a use of force on a *compliant* suspect is excessive and unreasonable."[341] The Fifth Circuit reasoned that under *Alexander*'s "some injury" test, "*[a]ny* force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold."[342] Accordingly, the Fifth Circuit held that the plaintiff's minor bleeding injury and hip pain sufficed for an excessive force claim under *Alexander*'s "some injury" test.[343]

Now, turning to the case at hand, this Court must first decide whether Durant's alleged injuries are sufficient under *Alexander*'s "some injury" test. Durant allegedly suffered physical pain, rib soreness, bruising, and psychological injuries from the incident with Officer Brooks.[344] Durant was not charged with any serious crime, and he testified in his deposition that he did not resist arrest.[345] Durant also testified in his declaration that Officer Brooks punched and kicked him while Durant was handcuffed and in the police vehicle's rear seat.[346] Fairley testified in her deposition that Officer Brooks kicked Durant *after* the officers obtained Durant's cell phone.[347] Although Officer Brooks denied using such force, he did admit that the use of force against Durant

[340] *Id.* at 714.

[341] *Id.* (emphasis added).

[342] *Alexander*, 854 F.3d at 309.

[343] *See Sam*, 887 F.3d at 714; *Sam*, 2017 WL 2784458 at *3.

[344] Rec. Doc. 34-1 at 2; Rec. Doc. 19-4 at 73–79, 107.

[345] *See* Rec. Doc. 19-4 at 23.

[346] Rec. Doc. 19-4 at 29–30, 35; *see also* Rec. Doc. 34-1 at 2.

[347] Rec. Doc. 19-5 at 59. Fairley's testimony—that Officer Brooks kicked Durant *after* he seized Durant's cell phone—would by itself create a genuine issue of material fact over whether Officer Brooks's force was objectively unreasonable. Durant was allegedly handcuffed, in the back seat of a police vehicle, and not trying to escape or resist in any manner because his cell phone had been procured already.

would have been unreasonable under the circumstances of this case.[348] Thus, viewing the evidence in the light most favorable to Durant, Officer Brooks's use of force was objectively unreasonable. Under *Alexander*'s "some injury" test, "*[a]ny* force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold."[349] Accordingly, Durant points to evidence to support injuries that satisfy *Alexander*'s "some injury" test.

Second, the plaintiff must establish that his or her injury resulted "directly and only from the use of force that was clearly excessive to the need."[350] In Durant's declaration, he testifies that "[a]s a result of the beating given by [Officers] Brooks and Kraly, [he] suffered from ongoing pain and soreness in [his] ribs."[351] Furthermore, during his deposition, Durant testified that Officer Brooks "picked his feet up and kicked" him *after* his cell phone was procured.[352] Fairley likewise testified in her deposition that Officer Brooks "picked up his foot, kicked [Durant], and

---

[348] Rec. Doc. 22-3 at 115. Although Officer Brooks denies kicking or punching Durant, this court must consider Durant's disputed testimony as true at the summary judgment stage.

[349] *Alexander*, 854 F.3d at 309. Defendants argue that Durant "soreness for a few days" is *de minimis* to support a claim for excessive force, but Durant also testified to suffering physical pain and bruising. If the "minor bleeding" injury in *Sam*, which "wasn't too serious" and "went away in a few days," in addition to hip pain, passed the *de minimis* threshold, Durant's alleged injuries regarding ongoing physical pain, soreness, and bruising easily pass that threshold—when viewed in light of how compliant Durant allegedly remained throughout the ordeal with Officer Brooks.

The Fifth Circuit has stated that "certain injuries are so slight that they will never satisfy the injury element." *Flores v. City of Palacios*, 381 F.3d 391, 397–98 (5th Cir. 2004); *see also Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (holding that "handcuffing too tightly, without more, does not amount to excessive force"). Yet the injuries in this case—physical pain, bruising, rib soreness, and psychological injuries—easily pass that "so slight" threshold. *See, e.g., Bone v. Dunnaway*, 657 Fed. App'x. 258, 262 (5th Cir. 2016) ("Although Bone's allegation of injury could be characterized as de minimis—bruising and a swollen cheek—whether an injury is cognizable depends on the reasonableness of the force, not just the extent of injury."); *Schmidt v. Gray*, 399 Fed. App'x. 925, 928 (5th Cir. 2010) (pain, soreness, and bruising was a legally cognizable injury); *Williams v. Bramer*, 180 F.3d 699, 704 (5th Cir. 1999) ("dizziness, loss of breath, and coughing" was a sufficient injury).

[350] *Cass*, 814 F.3d at 731.

[351] Rec. Doc. 34-1 at 2.

[352] Rec. Doc. 19-4 at 30.

slammed the door."[353] Durant's declaration and deposition testimony, in addition to Fairley's deposition testimony, is sufficient to create a genuine issue of material fact regarding whether Durant's ongoing physical pain, rib soreness, and bruising resulted "directly and only from the use of force that was clearly excessive to the need."[354]

Third, to determine whether an officer's use of force was objectively unreasonable, this Court must pay "careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect posed an immediate threat to the safety of the officers or others, and [3] whether he [was] actively resisting arrest or attempting to evade arrest by flight."[355] Here, viewing the facts in the light most favorable to Durant, Officer Brooks punched and kicked Durant while Durant was handcuffed, not resisting arrest, and located in the police unit's rear seat[356] That alleged amount of force on a compliant suspect is excessive and unreasonable.

---

[353] Rec. Doc. 19-5 at 59.

[354] Defendants argue that this Court must evaluate Officer Brooks and Officer Kraly's actions separately when determining whether Officer Brooks's actions caused Plaintiffs' purported injuries. Specifically, Defendants argue that Plaintiffs "must prove that each of them sustained an injury from which resulted directly and only from the force applied by [Officer Brooks] which was objectively unreasonable." Defendants point out that Plaintiffs routinely allege that "Brooks and Kraly" committed an action against them without specifying who caused the injury. Defendants conclude that "[P]laintiffs have failed to distinguish between the alleged actions of [Officer] Brooks from those of [Officer] Kraly."

Yet the Fifth Circuit has already rejected Defendants' argument. To accept Defendants' argument "would mean that when a plaintiff suffers injuries at the hands of multiple officers for multiple reasons, she will be precluded from stating an excessive force claim against any single officer for failure to allege that her injuries 'resulted directly and only from' that particular officer's excessive use of force." *Lincoln v. Turner*, 874 F.3d 833, 847 (5th Cir. 2017). Durant has clearly stated that "[a]s a result of the beating given by [Officers] Brooks and Kraly, [he] suffered from ongoing pain and soreness in [his] ribs." Rec. Doc. 34-1 at 2. That is sufficient to create a genuine issue of material fact concerning whether Officer Brooks's alleged punching and kicking caused Durant's ongoing physical pain, rib soreness, and bruising.

[355] *Tarver*, 410 F.3d 745, 753 (5th Cir. 2005) (quoting *Gutierrez*, 139 F.3d at 447).

[356] Rec. Doc. 19-4 at 29–30, 35; Rec. Doc. 34-1 at 2; *see also* Rec. Doc. 19-5 at 59 (Fairley testifying that Officer Brooks kicked Durant *after* procuring Durant's cell phone).

Finally, under the second step of qualified immunity inquiry, the Court must consider whether "the officer's use of force, though a violation of the Fourth Amendment, was nevertheless objectively reasonable in light of clearly established law at the time the challenged conduct occurred."[357] The law was clearly established law at the time of Officer Brooks's investigatory stop and subsequent arrest that "once a suspect has been handcuffed and subdued, and is no longer resisting, an officer's subsequent use of force is excessive."[358] Here, Durant points to evidence that Officer Brooks punched and kicked him while he was handcuffed, not resisting arrest, and located in the police unit's rear seat.[359] The Fifth Circuit's precedent is clear enough that every reasonable official would understand that punching or kicking a non-threatening and handcuffed suspect violates the law. Therefore, viewing the evidence in the light most favorable to Durant, Officer Brooks's alleged use of force was objectively unreasonable in violation of clearly established law. Accordingly, Defendants are not entitled to summary judgment on Durant's excessive force claim under the Fourth Amendment.

*b. Fairley*

Next, the Court must consider Fairley's excessive force claim. Fairley allegedly suffered psychological injuries from being handcuffed.[360] Defendants argue that Fairley has not alleged

---

[357] *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008).

[358] *Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015); *see also Bush*, 513 F.3d at 502; *Gomez v. Chandler*, 163 F.3d 921, 922, 924–25 (5th Cir.1999) (stating that use of force "while [a prisoner's] hands were handcuffed behind his back" could be considered excessive and precluded summary judgment); *Deville*, 567 F.3d at 169 (Plaintiff "had a clearly established right to be free from excessive force, and it was clearly established that the amount of force that the officers could use depended on the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee.")

[359] Rec. Doc. 19-4 at 29–30, 35; Rec. Doc. 34-1 at 2; *see also* Rec. Doc. 19-5 at 59 (Fairley testifying that Officer Brooks kicked Durant *after* procuring Durant's cell phone).

[360] *See* Rec. Doc. 19-5 at 29; Rec. Doc. 1 at 5.

an injury that exceeds the *de minimis* threshold.[361] Defendants also argue that Fairley admitted her alleged psychological injuries began in December 2017—before the March 16, 2018 investigatory stop at issue here.[362] Defendants quote Fairley's deposition testimony:

> Q. Are you [Fairley] claiming any injuries as a result of this incident:
>
> A. Yes. Injuries
>
> Q. Okay. In general terms, what do you believe your claims to be?
>
> A. More emotional than physical. Like I didn't have any physical injuries. It's just emotional injuries. Like I couldn't believe what I was experiencing. Like it was disrespectful for me as a woman. It was just uncalled for.[363]

Defendants concede that psychological injuries alone are sufficient to exceed the *de minimis* threshold.[364] Defendants claim that "[w]hen Fairley was questioned about her mental and emotional distress, she generally described a fear of the police" and "a loss of reputation."[365] Yet Fairley testified in her deposition that her psychological injuries started after the "first incident" with Officer Brooks in December 2017—which is before Officer Brooks's March 16, 2018 investigatory stop at issue here.[366] Plaintiffs' opposition brief does not dispute that Fairley's injuries were caused by a prior incident with Officer Brooks. Plaintiffs' opposition brief mentions that "[s]ince being seized and handcuffed by [Officer] Brooks, [Fairley] has also suffered from nightmares, anxiety, and fear of the police,"[367] but that allegation does not state her injuries

[361] Rec. Doc. 19-1 at 26–41.

[362] *Id.* at 41.

[363] *Id.* at 38 (quoting Rec. Doc. 19-5 at 29–30).

[364] Rec. Doc. 19-1 at 40.

[365] *Id.* at 39.

[366] Rec. Doc. 19-5 at 36 –37.

[367] Rec. Doc. 22 at 4 (citing Rec. Doc. 34-1).

resulted "directly and only from" Officer Brooks's alleged excessive force on March 16, 2018.

Moreover, Fairley does not point to any evidence or caselaw to demonstrate that her handcuffing was excessive under the circumstances. "[M]inor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force."[368] The Fifth Circuit has held that "acute contusions of the wrist" and a "psychological injury from being handcuffed" entail only *de minimis* injuries.[369] Fairly does not argue or point to any evidence to show that Officer Brooks's force was objectively unreasonable under the circumstances. The undisputed evidence demonstrates that Fairley's alleged psychological injuries did not result directly and only from a use of force that was excessive. Finally, Fairley does not attempt to satisfy her burden of rebutting Defendants' qualified immunity defense and showing that her handcuffing entailed conduct "*every* reasonable official would understand" violates a clearly established right. For these reasons, Officer Brooks is entitled qualified immunity and summary judgment on Fairley's excessive force claim.

### 3. Whether Officer Brooks is Entitled to Summary Judgment on Plaintiffs' Claims for Bystander Liability

Defendants argue that Officer Brooks is entitled to qualified immunity from suit with respect to Durant's bystander liability claim under Section 1983.[370] Defendants claim that Officer Brooks cannot have "any bystander liability for any actions committed by an officer who is not named as a defendant to these proceedings."[371] Durant responds that Officer Brooks is liable for

---

[368] *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007).

[369] *Tarver*, 410 F.3d at 751.

[370] Rec. Doc. 19-1 at 48.

[371] *Id.* Although the Complaint states that Fairley also brings a bystander claim against Officer Brooks, Fairley points to no evidence in her opposition brief to show that genuine issue of material facts remains regarding her bystander claim. Thus, Fairley has failed to meet her burden of rebutting Officer Brooks's

not taking reasonable measures to protect him from Officer Kraly's alleged excessive force.[372]

Under Fifth Circuit precedent, a police officer may be held liable under a bystander-liability theory pursuant to Section 1983.[373] To prove bystander liability, a plaintiff must demonstrate that a defendant officer "(1) [knew] that a fellow officer [was] violating an individual's constitutional rights; (2) [had] a reasonable opportunity to prevent the harm; and (3) [chose] not to act."[374] Moreover, in order for bystander liability to exist, there must be an underlying use of excessive force.[375] For example, in *Hale v Townley*, a plaintiff brought a claim for bystander liability under Section 1983 against a police officer who allegedly stood by and encouraged his fellow officer's use of excessive force against the plaintiff.[376] The Fifth Circuit deemed evidence of those allegations sufficient to create a genuine issue of material fact and preclude summary judgment on the plaintiff's claim for bystander liability.[377]

Here, Defendants argue that Officer Brooks cannot be held liable under the bystander doctrine "for any actions committed by an officer who is not named as a defendant to these proceedings."[378] Defendants do not cite any law for that proposition.[379] Nevertheless, in *Kitchen*

---

qualified immunity defense. Accordingly, Fairley's bystander claim fails as a matter of law.

[372] Rec. Doc. 22 at 7.

[373] *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013).

[374] *Id.*

[375] *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) ("The district court correctly held that an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983.")

[376] *Id.*

[377] *Id.*

[378] Rec. Doc. 19-1 at 48.

[379] *Id.* The Fifth Circuit' language indicates that only another officer's use of force need be supported by evidence. *Hale*, 45 F.3d at 919 ("The district court correctly held that an officer who is present at the scene and does not take reasonable measures to protect a suspect from *another officer's use of excessive force*

*v. Dallas County*, the Fifth Circuit considered a situation in which the plaintiff brought bystander claims against police officers for not taking reasonable measures to prevent an unidentified officer's excessive force.[380] The Fifth Circuit in *Kitchen* approvingly cited a sister circuit that held bystander liability attaches regardless of whether the plaintiff can specifically identify the officer who used excessive force.[381] The Fifth Circuit in *Kitchen* also approvingly cited multiple sister circuits that held bystander liability could attach even when the plaintiff *never identified* the police officer who used excessive force.[382] The Fifth Circuit concluded in *Kitchen* that "bystander liability may attach regardless of whether the directly responsible officer can be specifically identified."[383]

Here, Durant contends that Officer Kraly used excessive force—punching Durant while he was handcuffed—in the presence of Officer Brooks.[384] Durant also testified in his deposition that Officer Brooks "assist[ed]" Officer Kraly while Officer Kraly punched Durant.[385] Therefore, viewing the facts in the light most favorable to Durant, Officer Brooks (1) knew that Officer Kraly was using excessive force while beating a handcuffed Durant, (2) had a reasonable opportunity to prevent Officer Kraly's excessive force, and (3) chose not to prevent Officer Kraly's excessive force.

---

may be liable under section 1983.").

[380] 759 F.3d 468, 481 (5th Cir. 2014).

[381] *Id.* (citing *Sanchez v. City of Chicago*, 700 F.3d 919, 926 (7th Cir. 2012)).

[382] *Id.* (citing *Smith v. Ray*, 409 Fed. App'x. 641, 649–50 (4th Cir. 2011)); *Id.* (citing *Gaudreault v. Municipality of Salem, Massachusetts*, 923 F.2d 203, 207 & n. 3 (1st Cir. 1990)).

[383] *Id.*

[384] Rec. Doc. 19-4 at 29–30; Rec. Doc. 34-1 at 2.

[385] Rec. Doc. 19-4 at 29–30.

Next, Durant must demonstrate that Officer Brooks's conduct was objectively unreasonable in light of clearly established law. The Fifth Circuit had previously determined it is "clearly established in the Fifth Circuit that an officer [can] be liable as a bystander in a case involving excessive force if he knew a constitutional violation was taking place and had a reasonable opportunity to prevent the harm."[386] Officer Brooks's alleged participation in the physical assault of Durant is objectively unreasonable in light of the clearly established law described above. According to Durant, not only did Officer Brooks watch Officer Kraly use excessive force, Officer Brooks assisted Officer Kraly's alleged assault.[387] Officer Brooks's alleged assault is worse than the police officer's encouragement of excessive force in *Hale.* No reasonable official could have mistakenly thought Officer Brooks's alleged actions did not violate the law.

In sum, genuine issues of material fact remain for the jury to decide regarding Durant's bystander claim, and Officer Brooks is not entitled to qualified immunity at the summary judgment stage. Summary judgment is not appropriate on Durant's bystander claim against Officer Brooks under Section 1983.

#### 4. Whether Officer Brooks is Entitled to Summary Judgment on Durant's First Amendment Retaliatory Claim

Defendants request summary judgment on Durant's First Amendment retaliation claim against Officer Brooks.[388] Durant claims that Officer Brooks physically attacked Durant and seized his cell phone because Durant used the cell phone to record Officer Brooks's police

[386] *Hamilton v. Kindred*, 845 F.3d 659, 663 (5th Cir. 2017); see also *Whitley*, 726 F.3d at 646 ("[A]n officer may be liable under § 1983 under a theory of bystander liability where the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.") (internal quotation marks and citation omitted).

[387] Rec. Doc. 19-4 at 29–30; Rec. Doc. 34-1 at 2.

[388] Rec. Doc. 19-1 at 21–22.

conduct.[389] Durant argues that he has a First Amendment right to record the police under Fifth Circuit precedent, but Durant concedes his right to record the police is subject to reasonable time, place, and manner restrictions.[390]

Defendants deny that Officer Brooks seized Durant's cell phone or physically attacked Durant for using his cell phone.[391] Yet, accepting Durant's allegations as true, Defendants argue that Officer Brooks is entitled to qualified immunity because no clearly established law provided that a person maintains a constitutional right to record police activity while detained or arrested upon probable cause.[392]

First, to overcome Officer Brooks's qualified immunity defense, Durant must demonstrate the three elements of a retaliation claim under the First Amendment. Those three elements are: (1) he engaged in constitutionally protected activity, (2) Officer Brooks's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) Officer Brooks's adverse actions were substantially motivated against Durant's exercise of constitutionally protected conduct.[393] Second, to overcome Officer Brooks's qualified immunity defense, Durant must demonstrate that Officer Brooks's actions were objectively

[389] *See* Rec. Doc. 19-4 at 29–30.

[390] Rec. Doc. 22 at 8.

[391] Rec. Doc. 19-1 at 21–22.

[392] *Id*. Defendants also argue that probable cause existed to arrest Durant because he had outstanding warrants. *Id.* Defendants contend that, when probable cause exists to arrest a person, arguments that the arrestee's speech motivated the arrest must fail "no matter how clearly that speech may be protected by the First Amendment." *Id.* at 21. Yet Durant is not arguing that the officers arrested him because of his First Amendment activity. Instead, he is arguing that they physically assaulted him and took away his phone because of his First Amendment activity.

[393] *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

unreasonable in light of clearly established law when the disputed action occurred.[394] This Court has the discretion to decide which prong of the qualified immunity analysis to initially address.[395] The Court will use its discretion to commence with the second prong.

For a constitutional right to be clearly established under the second prong, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[396] The court "must ask whether the law so clearly and unambiguously prohibited [the official's] conduct that *every* reasonable official would understand that what he is doing violates [the law]."[397] "To answer that question in the affirmative, [the Court] must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a *high degree of particularity*."[398]

Durant relies on the Fifth Circuit's 2017 decision in *Turner v. Lieutenant Driver* to show Officer Brooks violated a clearly established right under the First Amendment.[399] *Turner* is the only First Amendment case cited by Durant.[400] In that case, the Fifth Circuit held that "First Amendment principles, controlling authority, and persuasive precedent demonstrate that a First Amendment right to record the police does exist, subject only to reasonable time, place, and manner restrictions."[401] Relying on *Turner*, Durant casually concludes that he "engaged in clearly

---

[394] *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

[395] *See Pearson*, 555 U.S. at 236.

[396] *Turner v. Lieutenant Driver*, 848 F.3d 678, 685 (5th Cir. 2017) (quoting *Anderson*, 483 U.S. at 640).

[397] *Id.* at 686 (quoting *Anderson*, 483 U.S. at 640).

[398] *Id.* (quoting *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011)).

[399] Rec. Doc. 22 at 8.

[400] *Id.*

[401] *Turner*, 848 F.3d at 688.

established, constitutionally protected activity when he attempted to record the activities of [Officers] Brooks and Kraly."[402]

Yet, instead of helping Durant, the *Turner* decision demonstrates why he cannot defeat the second prong of the qualified immunity analysis. In *Turner*, a citizen videotaped the Fort Worth Police Station from a public sidewalk.[403] Police officers confronted the plaintiff and asked him to provide identification.[404] The plaintiff refused to provide identification, and, without warning, a police officer handcuffed the plaintiff and took his video camera.[405] The plaintiff in *Turner* brought a First Amendment retaliation claim against the police officer.[406] The Fifth Circuit held that "a First Amendment right to record the police does exist, subject only to reasonable time, place, and manner restrictions."[407] The Fifth Circuit noted that "in this case, however, we need not decide which specific time, place, and manner restrictions would be reasonable."[408]

The facts in *Turner* are different from the facts in this case. Here, unlike the citizen in *Turner* who recorded the police station from a public sidewalk, Durant testified that he was detained, handcuffed, and sitting in the rear seat of a police vehicle when he tried to record police activity.[409] Durant does not point to any Fifth Circuit precedent or persuasive authority to demonstrate that a person detained pending investigation has a First Amendment right to use a

---

[402] Rec. Doc. 22 at 8.

[403] *Turner*, 848 F.3d at 684.

[404] *Id.*

[405] *Id.*

[406] *Id.* at 685.

[407] *Id.*

[408] *Id.* at 690.

[409] Rec. Doc. 19-4 at 29–30.

device to record police activity.[410] Clearly, despite the general right to record police activity, no binding or robust persuasive authority put Officer Brooks on notice that a detained person in handcuffs has the right to record police activity. As a result, "*every* reasonable official" would not have understood that prohibiting a handcuffed detainee from using his cell phone to record police activity violates the law. Officer Brooks is entitled to qualified immunity and summary judgment on Durant's First Amendment retaliation claim.

**5. Whether Officer Brooks is entitled to Summary Judgment on Durant's Malicious Prosecution Claim under Section 1983**

Durant argues that Officer Brooks's alleged malicious prosecution—charging Durant with violating Ordinance 16.66-1 without probable cause—"prompted the violation of Durant's rights protected by the United States Constitution, including [an] unlawful seizure."[411] Durant alleges that Officer Brooks is "liable unto Durant for malicious prosecution as a matter of federal law" pursuant to Section 1983.[412] Defendants argue that Officer Brooks should be granted qualified immunity because (1) no freestanding right to be free from malicious prosecution exists under the United States Constitution and (2) arresting Durant pursuant to seven outstanding attachments did not violate any clearly established law.[413]

The Fifth Circuit has held that the United States Constitution does not include a "freestanding" right to be free from malicious prosecution.[414] Instead, a plaintiff must demonstrate that "officials violated specific constitutional rights in connection with a 'malicious

[410] Rec. Doc. 22.

[411] Rec. Doc. 1 at 9.

[412] *Id.*

[413] Rec. Doc. 19-1 at 41, 45.

[414] *Deville*, 567 F.3d at 169.

prosecution.'"[415] For instance, "the initiation of criminal charges without probable cause may set in force events that run afoul of the . . . Fourth Amendment if the accused is seized and arrested."[416] Such claims of "lost constitutional rights are for violation of rights locatable in constitutional text."[417] Such claims are *not* "claims for malicious prosecution and labeling them as such only invites confusion."[418]

Here, Durant argues that Officer Brooks's alleged malicious prosecution—arising out of the Ordinance 16-66.1 charge—violated his rights in connection with the "United States Constitution" and involved an "unlawful seizure."[419] To the extent Durant alleges a freestanding right to be free from malicious prosecution under the "United States Constitution," Defendants are entitled to summary judgment as a matter of law.

Durant also alleges that the malicious prosecution resulted in an unlawful seizure that violated his Fourth Amendment right.[420] Durant does not clearly articulate the scope of his malicious prosecution claim arising out of Officer Brooks's alleged "unreasonable seizure" claim under the Fourth Amendment. Nevertheless, any false arrest claim by Durant pursuant to the Fourth Amendment would fail as a matter of law. Officer Brooks only needed probable cause to arrest Durant on *one* charge[421]—and Durant does not point to any evidence to dispute that

---

[415] *Id.*

[416] *Id.* (internal quotation marks and citation omitted).

[417] *Castellano v. Fragozo*, 352 F.3d 939, 958 (5th Cir. 2003).

[418] *Id.* at 953–54.

[419] Rec. Doc. 1 at 9.

[420] *Id.*

[421] *See Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995) ("If there was probable cause for any of the charges made . . . then the arrest was supported by probable cause, and the claim for false arrest fails.") (internal quotation marks and citation omitted).

Durant's multiple outstanding attachments provided Officer Brooks with probable cause to initially arrest Durant on March 16, 2018.[422]

Moreover, to the extent Durant brings a malicious prosecution claim in connection with a violation of other constitutional rights, he has failed to meet his burden of overcoming Officer Brooks's qualified immunity defense. Durant failed to identify "specific evidence in the record, and articulate" precisely how that evidence supports his malicious prosecution claim in connection with any other constitutional violation—including any Fourteenth Amendment violation. Durant does not specify what provision he is invoking under the Fourteenth Amendment, and he does not demonstrate whether the law under the Fourteenth Amendment was clearly established when Officer Brooks arrested him. Accordingly, Durant did not meet his burden for the first and second prong of the qualified immunity analysis for any other constitutional claim, including any Fourteenth Amendment claim. Therefore, Officer Brooks is entitled to summary judgment on Durant's malicious prosecution claim regarding the violation of Durant's rights under "the United States Constitution" and his "unlawful seizure."

### 6. Whether Defendants are Entitled to Summary Judgment on Plaintiff's Claims against Chief Lawson and Officer Brooks in their Official Capacities

Defendants request summary judgment on Plaintiffs' claims against Chief Lawson and Officer Brooks in their official capacities under Section 1983.[423] The Supreme Court and Fifth

---

[422] The Court recognizes that a false arrest claim is not the only possible claim under the Fourth Amendment for an "illegal seizure"—which could entail a pretrial detention. Durant does not point to any evidence to suggest his seizure pursuant to Ordinance 16-66.1 resulted in any additional detention separate from the detention from his arrest on the unrelated attachments.

[423] Rec. Doc. 19-1 at 53. The Court notes that Defendants request summary judgment dismissing the claims against Defendants Brooks and Lawson in their official capacities, but do not offer specific argument in the motion as to why they are entitled to summary judgment on the claims against the individual Defendants in their official capacities under Section 1983.

Circuit have both recognized that suits against a public official in his official capacity "generally represent another way of pleading an action against an entity of which an officer is an agent."[424] "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."[425] The Fifth Circuit has further concluded that district courts may properly dismiss claims against municipal officers in their official capacities when they are duplicative of claims against the governmental entities themselves.[426] Here, Plaintiffs have sued both Chief Lawson and Officer Brooks in their official capacities, and Plaintiffs have not set forth any argument or evidence as to why both the official claims against the individual Defendants and the government entity should be maintained.[427] Because "it is proper to dismiss allegations against municipal officers in their official capacities when the allegations duplicate claims against the governmental entity itself,"[428] and the City has received notice and an opportunity to respond, Defendants are entitled to summary judgment on Plaintiffs' claims against the individual Defendants in their official

---

[424] *Burge v. Par. of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978)).

[425] *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

[426] *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) ("The district court was also correct in dismissing the allegations against all of the municipal officers and two of the employees of the Corps of Engineers in their official capacities, as these allegations duplicate claims against the respective governmental entities themselves.") (citing *Flores v. Cameron County, Tex.*, 92 F.3d 258, 261 (5th Cir. 1996)); *see also Moton v. Wilkinson*, No. 08-1356, 2009 WL 498487, at *1 (E.D. La. Feb. 26, 2009) (Vance, J.) (noting that the Fifth Circuit has generally held that a plaintiff cannot maintain an action against an employer and its agent in his official capacity in other contexts, and that this principle also applies to suits against a municipality and its officers) (citing *Smith v. Amedisys, Inc.*, 298 F.3d 434, 449 (5th Cir. 2002), *Romero*, 256 F.3d at 355, and *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999)).

[427] Rec. Doc. 22 at 19.

[428] *Thompson v. Connick*, 578 F.3d 293, 297 n.4 (5th Cir. 2009), *rev'd on other grounds*, 563 U.S. 51, 131 (2011); *see e.g.*, *U.S. ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, No. 12-2202, 2014 WL 1512001, at *9 (E.D. La. Mar. 26, 2014) (Fallon, J.); *Derischebourg v. Clark*, No. 15-1712, 2016 WL 98617, at *8 (E.D. La. Jan. 8, 2016) (Africk, J.) ("This Court has previously dismissed official-capacity claims against officers of an entity which were redundant of other claims in a lawsuit.").

capacities under Section 1983.[429]

### 7. Whether Gretna is entitled to Summary Judgment on Durant's *Monell* Claim

Plaintiffs claim that Gretna can be held liable under *Monell v. Department of Social Services* because Ordinance 16-66.1 is unconstitutional and was the moving force behind Durant's arrest and the initiation of charges against Durant for threatening an officer.[430] Defendants argue that summary judgment should be granted on Plaintiffs' *Monell* claim.[431] Defendants argue that Ordinance 16-66.1 was not the "moving force behind Durant's arrest" because Officer Brooks initially arrested Durant for multiple outstanding attachments.[432] Defendants further argue that at the time of Durant's arrest, Ordinance 16-66.1 had not been declared unconstitutional, and that Durant was not harmed by the arrest pursuant to Ordinance 16-66.1.[433]

With respect to a Section 1983 claim against a municipality, no liability exists for governmental entities based on vicarious liability or *respondeat superior*.[434] Yet the United States Supreme Court held in *Monell* that "when execution of a government's policy or custom, whether

[429] *See generally Section 1983 Litigation* (3d ed.) 2014 ("[W]hen a § 1983 complaint asserts a claim against a municipal entity and municipal official in her official capacity, federal district courts routinely dismiss the official capacity claim as duplicative or redundant."). Plaintiffs argue only that Gretna can be held liable under *Monell v. Department of Social Services* because Ordinance 16-66.1 is unconstitutional and was the moving force behind Durant's arrest and the initiation of charges against Durant for threatening an officer. Plaintiffs do not argue that Gretna or the individual defendants could be held liable in their official capacity on any of the other claims raised herein.

[430] Rec. Doc. 1 at 16.

[431] Rec. Doc. 19-1 at 52.

[432] *Id.*

[433] *Id.*

[434] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 693 (1978)).

made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . the government as an entity is responsible under § 1983."[435] "Local governing bodies, therefore, can be sued directly under § 1983 . . . where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."[436] To establish a Section 1983 claim against a municipality, the official policy must be the cause and moving force of the constitutional violation.[437] Additionally, the "policymaker must have either actual or constructive knowledge of the alleged policy."[438] Therefore, "[p]roof of municipal liability sufficient to satisfy *Monell* requires: (1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)."[439]

In this case, Defendants do not dispute that Ordinance 16-66.1 was effectively declared overbroad and unconstitutional by the Fifth Circuit's decision in *Seals v. McBee*.[440] In *Seals*, the plaintiff challenged the constitutionality of Louisiana Revised Statute § 14:122, which criminalized "the use of violence, force, or threats" on any public officer or employee with the intent to influence the officer's conduct in relation to his position.[441] The defendant asserted that

---

[435] *Id.* at 694.

[436] *Id.* at 690.

[437] *Id.* at 694.

[438] *Cox v. City of Dallas*, 430 F.3d 734, 748–49 (5th Cir. 2005).

[439] *Jauch v. Choctaw Cty.*, 874 F.3d 425, 435 (5th Cir. 2017) (quoting *Pineda v. Cty. of Houston*, 291 F.3d 325, 328 (5th Cir. 2002); *Piotrowski v. Cty. of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

[440] Rec. Doc. 19-1 at 50.

[441] 898 F.3d 587, 590 (5th Cir. 2018).

he was pepper sprayed, verbally objected to his arrest, and threatened to make complaints about the officer's conduct.[442] Because "[t]hose kinds of threats are part of the core First Amendment rights 'by which we distinguish [our] free nation from a police state,'" the Fifth Circuit held that the criminalization of such threats was unconstitutionally overbroad.[443] Gretna City Ordinance 16-66.1, as drafted and in effect at the time of Durant's arrest on March 16, 2018, mirrored the provisions contained in former Louisiana Revised Statute § 14:122 for threatening public officials. Therefore, at the time of Durant's arrest, Ordinance 16-66.1 was unconstitutionally overbroad.

Defendants admit that Ordinance 16-66.1 is unconstitutional.[444] Municipalities, unlike individual police officers, "do not enjoy immunity from suit—either absolute or qualified—under § 1983."[445] To establish liability against Gretna, Plaintiffs do not have to establish that the constitutional right was clearly established. Accordingly, because it is undisputed that Ordinance 16-66.1—an official ordinance enacted by the Gretna City Council—is unconstitutional, Gretna can be held liable if Plaintiffs can show that the ordinance was the "moving force" behind a violation of Durant's constitutional rights.

"A municipality is liable only when its policy is the 'moving force' behind the suffered injury, but when a municipal policy itself violates federal law, such a policy necessarily constitutes the 'moving force.'"[446] Therefore, a municipality can be held liable if "[t]he official

---

[442] *Id.*

[443] *Id.* at 600.

[444] Rec. Doc. 25 at 15–16.

[445] *See Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993).

[446] *Bishop v. Arcuri*, 674 F.3d 456, 467 (5th Cir. 2012).

policy itself [is] unconstitutional."[447]

For instance, in *Jauch v. Choctaw County*, the Fifth Circuit considered a plaintiff's claim that he was subject to indefinite detention because of the county's indefinite detention procedure.[448] The court found that the policy the plaintiff challenged could not be separated from the procedure that the court found constitutionally deficient.[449] Therefore, the court reasoned that "[i]n cases like this one, where 'fault and causation' are 'obvious,' 'proof that the municipality's decision was unconstitutional' establishes 'that the municipality itself was liable for the plaintiff's constitutional injury.'"[450]

Here, Durant claims that he was illegally charged with threatening an officer because Ordinance 16-66.1 was unconstitutional. Like in *Jauch*, Durant's challenges cannot be separated from the ordinance Defendants admit was constitutionally deficient. Defendants argue that Durant did not suffer any harm as a result of the charge because Officer Brooks initially arrested Durant for multiple outstanding attachments. Yet Durant did suffer some harm because he had to defend himself on the unconstitutional charge until that charge was dismissed. Therefore, '"fault and causation' are 'obvious,'" and "'proof that the municipality's decision was unconstitutional' establishes 'that the municipality itself was liable for the plaintiff's constitutional injury.'"[451] Accordingly, Gretna is not entitled to summary judgment on the *Monell* claim.

---

[447] *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 867 n.11 (5th Cir. 2012) (quoting *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009)); *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004)).

[448] 874 F.3d 425, 435 (5th Cir. 2017).

[449] *Id.*

[450] *Id.* at 435 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997)).

[451] *Id.*

### *C. Whether Defendants are entitled to summary judgment on Plaintiffs' claims under Louisiana Law*

#### 1. Whether Officer Brooks is Entitled to Summary Judgment on Durant's Malicious Prosecution Claim under Louisiana Law

Defendant urges this Court to grant summary judgment on Plaintiff's malicious prosecution claim under Louisiana law.[452] Durant argues that Officer Brooks maliciously prosecuted Durant when charging him with violating Ordinance 16-66.1.[453] The elements of a malicious prosecution claim under Louisiana law are:

> (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff.[454]

Defendants fail to argue that elements one, two, three, and six are not met in this case.[455] Defendants argue, however, that Plaintiff cannot prove elements three (bona fide termination) and four (absence of probable cause).[456] Accordingly, this Court will analyze whether a genuine issue of material fact exists for elements three and four.

*a. Bona fide termination of the underlying proceeding*

Defendants cite the Fifth Circuit's opinion, *Deville v. Marcantel*, a 2009 decision by the Fifth Circuit, holding that a "procedural dismissal of the charges, even if the dismissal is with

---

[452] Rec. Doc. 19-1 at 43–45.

[453] Rec. Doc. 22 at 11–14.

[454] *Lemoine v. Wolfe*, 2014-1546 (La. 3/17/15); 168 So. 3d 362, 368 (quoting *Jones v. Soileau*, 448 So.2d 1268, 1271 (La. 1984)).

[455] Rec. Doc. 19-1 at 41–45.

[456] *Id.* at 43.

prejudice," does not suffice for a bona fide termination under Louisiana law.[457] The Fifth Circuit instead held that the underlying proceeding must be decided on the merits.[458] Defendants argue that Durant's Ordinance 16-66.1 charge was dismissed—not decided on the merits—and therefore did not result in a "bona fide termination" in favor of Durant.[459]

On the other hand, Durant argues that the Louisiana Supreme Court held in 2015 that a *nolle prosequi* suffices as a bona fide termination for the purposes of a malicious prosecution claim.[460] Durant is correct about the current law. The Louisiana Supreme Court, in *Lemoine v. Wolfe*, disagreed with the Fifth Circuit's *Erie* guess in *Deville*.[461] The Louisiana Supreme Court instead held that a *nolle prosequi* suffices as a bona fide termination "unless the abandonment is for reasons not indicative of the innocence of the accused."[462] Such reasons include when the *nolle prosequi* is the result of (1) "an agreement or compromise with the accused"; (2) "misconduct on the part of the accused for the purpose of preventing trial"; (3) "mercy requested or accepted by the accused"; (4) "the institution of new criminal proceedings"; or (5) "the impossibility or impracticability of bringing the accused to trial"[463]

Here, the parties agree that Durant's criminal charge for violating Ordinance 16-66.1 was dismissed by Gretna.[464] Yet Defendants contend that Durant pleaded guilty to multiple unrelated

---

[457] *Id.* (quoting *Deville*, 567 F.3d at 173).

[458] *Id.* (quoting *Deville*, 567 F.3d at 173).

[459] *Id.*

[460] Rec. Doc. 22 at 12–13 (quoting *Lemoine*, 168 So. 3d at 370).

[461] *Lemoine*, 168 So. 3d at 370.

[462] *Id.*

[463] *Id.*

[464] Rec. Doc. 19-1 at 45; Rec. Doc. 22 at 12.

charges involving traffic tickets—driving a motorized vehicle without proper registration, for example—and, as a part of the plea agreement, Gretna agreed to dismiss the Ordinance 16-66.1 charge giving rise to Durant's malicious prosecution claim.[465] On the other hand, Durant argues that he did not enter into a "plea bargain, request mercy, or do anything other than assert his total innocence to the [Ordinance 16-66.1] charge."[466] Durant also claims that "Defendants point to no written plea agreement and the jury is entitled to believe Durant that he was not a party to any such agreement."[467]

Durant is correct: Defendants point to no written plea agreement dismissing the Ordinance 16-66.1 charge. Instead, Defendants point to the affidavit of W.J. Leblanc, Jr., the prosecutor for Gretna Mayor's Court.[468] Prosecutor Leblanc testified in his affidavit that Durant pleaded guilty to multiple unrelated charges involving traffic tickets and entered into a plea agreement on September 17, 2018.[469] Yet prosecutor Leblanc never attested that Durant's Ordinance 16-66.1 charge was dismissed because he pleaded guilty to the traffic violations.[470] In fact, prosecutor Leblanc's affidavit provides evidence of the exact opposite:

> In response to the decision rendered by the Fifth Circuit in Seals v. McBee to the best of his knowledge, information, and belief, all open and pending prosecutions against all defendants for violations of Gretna Ordinance 16-66.1 (prior to its

[465] Rec. Doc. 19-1 at 44–45.

[466] Rec. Doc. 22 at 12.

[467] *Id.* at 13.

[468] Rec. Doc. 19-11 at 1.

[469] *Id.* at 2–3.

[470] *Id.* at 1–4. Prosecutor Leblanc also testified that Gretna "dismissed the Contempt of Court charges that had been entered against Raymond Durant." Rec. Doc. 22 at 1–2. According to prosecutor Leblanc, a contempt of court charge "is added to a pending proceeding in Gretna Mayor's Court when an individual fails to attend a court date." *Id.* at 2. Durant's contempt of court charges do not involve the Ordinance 16-66.1 charge.

amendment) have been dismissed and shall not be prosecuted.[471]

That testimony by prosecutor Leblanc indicates Ordinance 16-66.1 charges were dismissed because of the Fifth Circuit's decision in *Seals v. McBee*. In any event, Durant testified that he "did not enter into a plea bargain, request mercy, or do anything other than asset his total innocence to the [Ordinance 16-66.1] charge."[472] A reasonable jury could believe Durant's testimony with no written plea agreement available. Accordingly, genuine issues of material fact remain concerning whether the Ordinance 16-66.1 charge resulted in a bona fide termination in favor of Durant. Summary judgment is not appropriate on the bona fide termination element.

*b. Probable cause*

A plaintiff ordinarily bears the burden to prove all elements of a malicious prosecution claim under Louisiana law. Yet, when the criminal charge at issue has been dismissed, as here, courts presume a police officer lacked probable cause to initiate a criminal proceeding.[473] The burden consequently shifts to the defendant to show that he acted on probable cause.[474] Here, both parties agree that Gretna dismissed the criminal charge at issue—Durant's Ordinance 16-66.1 charge.[475] Accordingly, this Court must presume that Officer Brooks did not have probable cause to initiate a criminal proceeding against Durant for violating Ordinance 16-66.1.[476]

---

[471] *Id.* at 3.

[472] Rec. Doc. 34-1 at 3.

[473] *Hope v. City of Shreveport*, 37,759 (La. App. 2 Cir. 12/17/03); 862 So. 2d 1139, 1143; *see also Keppard v. AFC Enters., Inc.*, 2000-2474 (La. App. 4 Cir. 11/28/01); 802 So. 2d 959, 965.

[474] *Id.*

[475] Rec. Doc. 19-1 at 45; Rec. Doc. 22 at 12.

[476] This Court previously held that a genuine issue of material fact exists regarding whether the Ordinance 16-66.1 dismissal was because of Durant's plea agreement and, therefore, resulted in a bona fide termination in favor of Durant. Accordingly, viewing the evidence in the light most favorable to Durant, the Ordinance 16-66.1 charge resulted in a "bona fide" termination in favor of Durant.

Probable cause to arrest someone under Louisiana law "exists when facts and circumstances within the knowledge of the arresting officer and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense."[477] "Probable cause depends not merely upon the actual state of the facts in the case, but upon the defendant's honest belief of the facts when making the charge against the plaintiff.[478] The "crucial determination" for probable cause "is whether the defendant had an honest and reasonable belief in the guilt of the plaintiff at the time charges were pressed."[479]

Here, Defendants do not point to undisputed evidence to demonstrate that Officer Brooks had probable cause to arrest Durant for violating Ordinance 16-66.1. Instead, Defendants point to Officer Brooks's probable cause to arrest Durant on unrelated warrants involving traffic tickets not at issue here.[480] To support such reasoning, Defendants analogize the instant malicious prosecution claim to false arrest claims under Louisiana law.[481] Defendants note that when an officer has probable cause to arrest a defendant on *any* charge, the officer cannot be held liable for false arrest, even if the officer lacked probable cause to accuse the defendant of subsequent charges.[482] Durant responds that "whether [Officer] Brooks had probable cause to arrest Durant for attachments related to traffic tickets for any other reason is not material to whether he had

---

[477] *Miller v. E. Baton Rouge Par. Sheriff's Dep't*, 511 So. 2d 446, 453 (La. 1987).

[478] *Craig v. Carter*, 30,625 (La. App. 2 Cir. 9/23/98), 718 So. 2d 1068, 1071.

[479] *Id.*

[480] Rec. Doc. 19-1 at 43.

[481] *Id.*

[482] *Id.*

probable cause to accuse Durant of threatening him [pursuant to Ordinance 16-66.1]."[483] The issue before this Court is whether probable cause to arrest a person bars a malicious prosecution claim when the probable cause relied upon to arrest does not involve the criminal charge giving rise to the malicious prosecution claim. Louisiana courts do not appear to have addressed this issue.

Yet Louisiana courts have repeatedly treated malicious prosecution claims and false arrest claims as distinct causes of action.[484] The logic behind requiring probable cause for only one charge in the false arrest context is strong because the arrestee would have been arrested regardless of whether the office had probable cause to arrest on all charges—assuming the officer had probable cause to arrest for at least one crime. Yet the same logic does not apply in the malicious prosecution context because the arrestee suffers additional harm by having to defend against each criminal charge not supported by probable cause.

The Fifth Circuit's reasoning concerning federal malicious prosecution claims helps illustrate the potential abuses in accepting Defendants' argument.[485] The Fifth Circuit has noted: "Our circuit has not had an opportunity to address the issue of whether a showing of probable cause with respect to one count of an indictment that charges various criminal acts arising out of the same transaction or occurrence is sufficient to defeat a claim of malicious prosecution as to

[483] Rec. Doc. 34 at 10.

[484] *See, e.g.*, *Barrios v. Yoars*, 184 So. 212, 215 (La. Ct. App. 1938) ("There is a marked distinction between actions for false imprisonment and those for malicious prosecution. In false imprisonment, the arrest is made either without any legal process or warrant or under a warrant void and null upon its face. In malicious prosecution, the proceedings are had in pursuance of legal process maliciously and wrongfully obtained.") (internal citations omitted); *see also Miller v. Desoto Reg'l Health Sys.,* 2013-639 (La. App. 3 Cir. 12/11/13), 128 So. 3d 649, 655; *Stark v. Eunice Superette, Inc*., 1983-918 (La. App. 3 Cir. 10/10/84), 457 So. 2d 291.

[485] *Collins v. Doyle*, 209 F.3d 719 n.15 (5th Cir. 2000)

all of the charges stemming from those events."[486] The circumstances of the *Collins* case did not require the Fifth Circuit to resolve this question in the *federal* context for malicious prosecution.[487] Yet in *Collins* the Fifth Circuit noted that "this issue, however, has been addressed by at least one of our sister circuits."[488] The Fifth Circuited quoted the Second Circuit's reasoning regarding the potential abuses:

> [W]e should not allow a finding of probable cause on [one charge] to foreclose a malicious prosecution cause of action on charges requiring different, and more culpable, behavior. [If that were the rule,] an officer with probable cause as to a lesser offense could tack on more serious, unfounded charges which would support a high bail or a lengthy detention, knowing that the probable cause on the lesser offense would insulate him from liability for malicious prosecution on the other offenses.[489]

This case's facts likewise help illustrate the legal issue and potential abuses embedded in Defendants' argument. Officer Brooks had reasonable suspicion of criminal activity to stop Durant's vehicle at night in Gretna, Louisiana.[490] After Officer Brooks stopped Durant, Officer Brooks discovered that Durant had outstanding warrants in Gretna and Jefferson Parish.[491] Durant's outstanding warrants involved prior traffic tickets that were unrelated to Officer Brooks's detention.[492] Officer Brooks arrested Durant due to those outstanding attachments.[493] While Officer Brooks escorted Durant to the Jefferson Parish Correctional Facility, Durant

---

[486] *Id.*

[487] *Id.*

[488] *Id.*

[489] *Id.* (quoting *Posr v. Doherty*, 944 F.2d 91 (2d Cir. 1991)).

[490] *See supra* at 36–44.

[491] Rec. Doc. 19-4 at 44.

[492] Rec. Doc. 19-11. The parties do not dispute the charges in Durant's outstanding attachments.

[493] Rec. Doc. 19-4 at 44.

allegedly told Officer Brooks that he would file a police misconduct complaint.[494] Officer Brooks allegedly responded by charging Durant with threatening a public officer pursuant to Gretna Ordinance 16-66.1.[495]

Durant now brings a malicious prosecution claim against Officer Brooks for charging him with violating Ordinance 16-66.1. Durant's malicious prosecution claim requires Officer Brooks to demonstrate probable cause to initiate a criminal proceeding against Durant. To prove he acted on probable cause, Officer Brooks invokes the probable cause to arrest Durant on the outstanding warrants for unrelated traffic tickets—not any probable cause to believe Durant violated Ordinance 16-66.1.[496] If this tactic were allowed, Officer Brooks could have charged Durant with serious offenses—without any reason to believe Durant committed any serious offenses—and not be liable for maliciously prosecuting Durant with those serious offenses. For example, after noticing Durant leave Key's Fuel Mart, Officer Brooks could have charged Durant with robbing Key's Fuel Mart, speeding, flight from a police officer, and other offenses. Yet, under Defendants' theory, Officer Brooks would not have maliciously prosecuted Durant because he had probable cause to arrest Durant on outstanding warrants for traffic tickets. Such an outcome is intolerable when viewing (1) Louisiana's distinct treatment of malicious prosecution claims and false arrest claims and (2) the potential for police officers to arrest plaintiffs on minor charges, tack on more serious charges, and know that they are shielded by the probable cause for the minor charges.

Therefore, there are material facts in dispute regarding whether Officer Brooks had

[494] Rec. Doc. 34-1 at 3.

[495] *Id.*

[496] Rec. Doc. 19-1 at 43.

probable cause to charge Durant with *violating Ordinance 16-66.1*. Accordingly, Defendants are not entitled to summary judgment on Durant's malicious prosecution claim under Louisiana law.

**2. Whether Officer Brooks is Entitled to Summary Judgment on Plaintiffs' Claims for False Arrest and False Imprisonment under Louisiana Law**

Plaintiffs bring false arrest and false imprisonment claims against Officer Brooks under Louisiana law.[497] Under Louisiana law, false arrest and false imprisonment claims require the following elements: "(1) detention of the person; and (2) the unlawfulness of the detention."[498] Probable cause to arrest a person is an absolute defense to any claim against police officers for false arrest or false imprisonment.[499] Undisputed evidence that an arrest was conducted because of a facially valid arrest warrant satisfies the probable cause inquiry.[500] In the false arrest context, an officer not having probable cause to arrest a person for one offense is immaterial if probable cause existed for a different offense.[501]

Here, Defendants point to the affidavit of Terri Brossette, a Lieutenant with the Gretna Police Department, which states that Durant had multiple outstanding attachments when Officer Brooks arrested Durant on March 16, 2018.[502] Durant does not point to any evidence to dispute

---

[497] Rec. Doc. 1 at 7.

[498] *Richard v. Richard*, 2011-299 (La. 10/25/11); 74 So. 3d 1156, 1159 (per curiam); *see also McMasters v. Dep't of Police*, 2013-0348 (La. App. 4 Cir. 5/15/15), 172 So. 3d 105, 116 ("Jurisprudence discussing the tort of false imprisonment indicates that a civil cause of action comprises two essential elements: "(1) detention of a person; and (2) the unlawfulness of such detention.").

[499] *McMasters*, 172 So. 3d at 116.

[500] *See Cain v. City of New Orleans*, No. CV 15-4479, 2016 WL 2849478, at *8 (E.D. La. May 13, 2016) (Vance, J.) ("In Louisiana, an arresting officer cannot be liable for false arrest when he acts pursuant to a facially valid arrest warrant.") (citing *Winn v. City of Alexandria*, 685 So. 2d 281, 283 (La. App. 3 Cir. 1996)).

[501] *See id.*

[502] Rec. 19-1 at 14 (citing Rec. Doc. 19-6). Defendants also point to the affidavit of W.J. Leblanc, Jr., the prosecutor for Gretna Mayor's Court, which states that Durant pled guilty to at least six charges involving outstanding attachments. Rec. Doc. 19-11.

Brossette's affidavit.[503] Moreover, relying on the earlier reasoning laid out in this Order that Plaintiffs were not unlawfully detained in violation of their Fourth Amendment rights, the Court also finds that Defendants are entitled to summary judgment on any false arrest or false imprisonment claims arising out of the investigatory stop in this case.[504]

### 3. Whether Officer Brooks is Entitled to Summary Judgment on Plaintiffs' claims for Battery under Louisiana Law

Plaintiffs allege that Officer Brooks committed battery against them.[505] The alleged battery against Durant entails Officer Brooks seizing, handcuffing, kicking, and punching Durant.[506] The alleged battery against Fairley entails Officer Brooks seizing and handcuffing Fairley.[507] Under Louisiana law, a battery is a "harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact."[508] "Under ordinary circumstances the use of reasonable force to restrain an arrestee shields a police officer from liability for battery."[509] Yet "[e]xcessive force transforms ordinarily protected force into an actionable battery."[510]

---

503 Rec. Doc. 22.

504 Plaintiffs' opposition brief does not argue, or point to evidence demonstrating, that Officer Brooks's detention of Fairley was not "reasonably related in scope to the circumstances that justified the stop." Put another way, Plaintiff's opposition brief does not argue, or point to any evidence, to explain whether Fairley's detention escalated into an arrest requiring probable cause. At the summary judgment stage, Fairley must "identify specific evidence in the record, and articulate" precisely how that evidence supports her claim. She has failed to do so here.

505 Rec. Doc. 1 at 8.

506 *Id.*

507 *Id.*

508 *Rice v. ReliaStar Life Ins. Co*., 770 F.3d 1122, 1135 (5th Cir. 2014) (quoting *Caudle v. Betts*, 512 So. 2d 389, 391 (La. 1987)).

509 *Id.* (quoting *Ross v. Sheriff of Lafourche Parish*, 479 So.2d 506, 511 (La. App. 1 Cir. 1985)).

510 *Id.* (quoting *Penn v. St. Tammany Parish Sheriff's Office*, 2002–0893, p. 7 (La. App. 1 Cir. 4/2/03); 843 So. 2d 1157, 1161)).

Here, because Officer Brooks is not entitled to summary judgement on Durant's excessive force claim under the Fourth Amendment, Officer Brooks is also not entitled to summary judgment on Durant's battery claim for the same reasons. Yet, because Officer Brooks is entitled to summary judgment on Fairley's excessive force claim under the Fourth Amendment, Officer Brooks is entitled to summary judgment on Fairley's battery claim under Louisiana law for the same reasons.

**4. Whether Officer Brooks and Officer Kraly Conspired to Violate Plaintiffs' Rights under Federal and State Law**

Plaintiffs bring a conspiracy claim against Officer Brooks under 42 U.S.C. § 1983 and Louisiana Civil Code Article 2324.[511] Plaintiffs allege that Officer Brooks and Officer Kraly conspired to violate several of Plaintiffs' federal and state law rights.[512] Defendants argue that Plaintiffs have "failed to allege or plead any facts to establish that [Officer] Brooks and [Officer Kraly] agreed to commit any actions" in violation of Plaintiffs' rights.

First, to prove a Section 1983 conspiracy, a plaintiff must prove "(1) the existence of a conspiracy involving state action" and (2) "a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy."[513] In addition, to establish the existence of a conspiracy, a plaintiff "must show that the defendants agreed to commit an illegal act."[514] Second, to prove a conspiracy under Article 2324, a plaintiff must prove that "(1) an agreement existed with one or more persons to commit an illegal or tortious act; (2) the act was actually committed; (3) the act

---

[511] Rec. Doc. 1 at 11.

[512] Rec. Doc. 34 at 9.

[513] *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019) (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990) (internal quotation marks omitted)).

[514] *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982).

resulted in plaintiff's injury; and (4) there was an agreement as to the intended outcome or result."[515]

Here, Plaintiffs argue that they identified the conspirators and conspiratorial conduct: Officer Brooks and Officer Kraly's warrantless seizure of Durant's cell phone with unreasonable force and First Amendment retaliation.[516] Yet, despite both Section 1983 conspiracy claims and Article 2324 claims requiring evidence of a *prior agreement* between the conspiratorial defendants, Plaintiffs do not point to any evidence supporting "facts tending to show a prior agreement ha[d] been made"[517] between Officer Brooks and Officer Kraly before seizing Durant's cell phone. Indeed, Plaintiffs do not mention any prior agreement between Officer Brooks and Officer Kraly.[518] Accordingly, summary judgment is granted on Plaintiffs' conspiracy claims against Officer Brooks under Section 1983 and Article 2324.

### ***D. Whether Defendants are Entitled to Summary Judgment on Plaintiffs' Remaining Claims***

Plaintiffs also bring claims against Officer Brooks for (1) intentional infliction of emotional distress under Louisiana law, and (2) kidnapping under Louisiana law.[519] Plaintiffs do not mention—or provide evidence in support of—these claims in their opposition brief. Therefore, this Court will quickly address each claim.

---

[515] *Doe v. Mckesson*, No. 17-30864, 2019 WL 6837921, at *4 (5th Cir. Dec. 16, 2019) (citing *Crutcher-Tufts Res., Inc. v. Tufts*, 992 So. 2d 1091, 1094 (La. Ct. App. 2008); La. Civ. Code art. 2324).

[516] Rec. Doc. 34 at 9.

[517] *Arsenaux*, 726 F.2d at 1024–25.

[518] Rec. Doc. 34 at 9.

[519] *Id.*

### 1. Whether Officer Brooks is Entitled to Summary Judgment on Plaintiffs' Claims for Intentional Infliction of Emotional Distress under Louisiana Law

Plaintiffs allege that Officer Brooks is liable to Plaintiffs for intentional infliction of emotional distress.[520] The Louisiana Supreme Court, in *White v. Monsanto*, recognized "the viability in Louisiana of a cause of action for intentional infliction of emotional distress."[521] To establish such a claim, a plaintiff must prove "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct."[522]

Here, Defendants deny that Officer Brooks's conduct, arresting Durant on outstanding warrants, constituted "extreme and outrageous" conduct.[523] Moreover, Defendants argue that Plaintiffs have failed to show "[Officer] Brooks desired to inflict any severe emotional distress."[524] Confronted with those arguments, Plaintiffs do not point to any evidence to prove Officer Brooks's conduct was extreme and outrageous.[525] Plaintiffs also do not point to any evidence to dispute whether Officer Brooks desired to inflict severe emotional distress upon Plaintiffs.[526] Plaintiffs' opposition brief does not mention intentional infliction of emotional

---

[520] Rec. Doc. 1 at 10.

[521] *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991).

[522] *Id.*

[523] Rec. Doc. 19-1 at 46.

[524] *Id.*

[525] Rec. Doc. 22.

[526] *Id.*

distress.[527] Accordingly, Officer Brooks is entitled to summary judgment on Plaintiffs' claims for intentional infliction of emotional distress under Louisiana law.

**2. Kidnapping**

Durant alleges that Brooks "is liable for kidnapping in violation of La. R.S. 14:44.1 and 14:45 inasmuch as he forcibly seized and carried Durant from one place to another without his consent, while armed with a dangerous weapon, and without probable cause, arguable probable cause, or any legal justification whatsoever."[528] Defendants point to evidence—Durant's outstanding attachments—to prove that Officer Brooks arrested Durant with probable cause.[529] Durant does not point to any evidence to contradict Defendants' evidence.[530] Plaintiffs' opposition brief does not mention kidnapping.[531] The undisputed evidence demonstrates that Officer Brooks had probable cause to arrest Durant. Accordingly, Officer Brooks is entitled to summary judgment on Durant's kidnapping claim.

***E. Whether Gretna and Officer Brooks are Vicariously Liable for Plaintiffs' Claims under Louisiana Law***

Plaintiffs allege that Gretna and Chief Lawson are vicariously liable under Louisiana Civil Code article 2320 ("Article 2320") in their official capacity for Officer Brooks's alleged torts under Louisiana law.[532] Article 2320 provides the following: "Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the

[527] *Id.*

[528] Rec. Doc. 1 at 8.

[529] Rec. Doc. 19-1 at 22.

[530] Rec. Doc. 22.

[531] *Id.*

[532] Rec. Doc. 1 at 12; Rec. Doc. 22 at 17.

functions in which they are employed." "Municipalities do not enjoy special protection from vicarious liability under Louisiana law and are subject to *respondeat superior* like every other employer."[533]

Here, Defendants do not contest that Officer Brooks was in his uniform and working in the course and scope of his employment as a Gretna police officer. Instead, Defendants contend that Gretna and Chief Lawson are not vicariously liable "for any action taken by [Officer] Brooks as a matter of Louisiana law" simply because Officer Brooks did not commit any tort under Louisiana law.[534]

For the reasons discussed above, Defendants are not entitled to summary judgment on Durant's battery and malicious prosecution claims under state law. Accordingly, Gretna and Chief Lawson are also not entitled to summary judgment on Durant's vicarious liability claims against them for battery and malicious prosecution under Louisiana law. On the other hand, no genuine issue of material fact exists for Durant and Fairley's remaining claims under Louisiana law—including false arrest, false imprisonment, conspiracy, intentional infliction of emotional distress, and kidnapping.[535] Gretna and Chief Lawson are entitled to summary judgment on those claims.

***F. Whether Plaintiffs are Entitled to Declaratory and Injunctive Relief regarding Gretna Ordinance 16-66.1***

Plaintiffs request that this Court declare Gretna Ordinance 16-66.1 violates the First Amendment of the United States Constitution and Article I, Sections 7 and 9, of the Louisiana Constitution.[536] Plaintiffs further request this Court enjoin "all defendants from further

[533] *Deville*, 567 F.3d at 174 (citing *Brasseaux v. Town of Mamou*, 199-1584 (La. 1/19/00); 752 So. 2d 815).

[534] Rec. Doc. 19-1 at 49.

[535] Moreover, no genuine issue of material fact exists for Fairley's battery claim.

[536] Rec. Doc. 1 at 15.

enforcement of Gretna Ordinance 16-66.1 against Durant or others."[537] In the instant motion, Defendants concede that the Fifth Circuit, in *Seals v. McBee*, effectively rendered Gretna Ordinance 16.66.1 overbroad and unconstitutional.[538] Yet Defendants point to record evidence that, on August 14, 2019, the Gretna City Council adopted ordinance number 4885 to amend and cure Ordinance 16.66.1's constitutional defect.[539] Defendants claim that Ordinance 4885 precisely defined the formerly overbroad terms in Ordinance 16-66.1.[540] Plaintiffs do not point to any evidence to contradict Defendants' contention that Ordinance 4885 cured Ordinance 16-66.1's constitutional defect.[541] Plaintiffs' opposition brief does not argue that Gretna Ordinance 16-66.1 remains unconstitutional post-Ordinance 4885.[542] Accordingly, Plaintiffs' request for declaratory and injunctive relief are denied.

### *G. Whether Plaintiffs' Declarations may be Considered at the Summary Judgment Stage*

Defendants first argue that Plaintiffs rely on unsworn declarations in their opposition brief.[543] Under 28 U.S.C. § 1746 ("Section 1746"), an unsworn declaration may raise a factual issue to preclude summary judgment if the statements within are pledged as "true and correct" under the penalty of perjury.[544] Defendants contend that Plaintiffs' unsworn declarations cannot be considered at the summary judgment stage because they do not affirm the statements within

---

[537] *Id.*

[538] Rec. Doc. 19-1 at 50.

[539] *Id.*; Rec. Doc. 19-12.

[540] Rec. Doc. 19-1 at 50.

[541] Rec. Doc. 22.

[542] *Id.*

[543] Rec. Doc. 25 at 2.

[544] *Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988).

their declarations are "true and correct."[545] Yet Plaintiffs' have amended their declarations and pledged that all statements within their declarations are "true and correct" under the penalty of perjury.[546] Plaintiffs' amended declarations satisfy Section 1746's requirements.

Second, Defendants argue that Plaintiffs' declarations contradict their previous sworn deposition testimony.[547] Defendants claim that Durant originally testified in his deposition that Officer Kraly opened the police unit's door and punched Durant several times in the ribs.[548] Defendants also claim that in Durant's deposition he stated that Officer Brooks "put his foot" on him while closing the police unit's door.[549] Defendants point out that Durant, in his subsequent declaration, testified that both Officer Kraly and Officer Brooks "started punching and kicking [him] while [he] was handcuffed in the back seat [of the police vehicle]."[550]

Defendants ignore crucial statements in Durant's deposition testimony. In his deposition, Durant testified:

> Q. Okay. And what did you tell him [Officer Kraly]?
>
> A. That I was going to Facebook Live this interaction with them.
>
> Q. And then what happened?
>
> A. He [Kraly] ran around, opened the [police vehicle's] door, proceeded to tackle me, jump on me, punch me, wrestling the phone. **And by that time [Officer]**

[545] Rec. Doc. 25 at 3.

[546] Rec. Doc. 34-1; Rec. Doc. 34-2.

[547] Rec. Doc. 25 at 5.

[548] *Id.* at 6.

[549] *Id.*

[550] *Id.*

> **Brooks came over and assisted him and helped.**[551]

Durant also testified:

> A. And, like I said, by that time [Officer] Brooks came around. And he — **you know, they was wrestling me together, both of them**. They was — they both was like in the back seat of the car trying to get the phone away from me.[552]

Durant never testified in his deposition that *only* Officer Kraly punched him. Thus, Durant's subsequent declaration testimony—that both Officer Kraly and Officer Brooks "started punching and kicking [him] while [he] was handcuffed in the back seat [of the police vehicle]"—is not contradictory at all. At most, Durant's declaration supplements his prior deposition testimony that Officer Brooks "assisted" and "helped" Officer Kraly. Accordingly, the Court considered Durant's amended declaration at the summary judgment stage.[553]

## V. Conclusion

Considering the foregoing reasons,

---

[551] Rec. Doc. 19-4 at 33–34.

[552] *Id.* at 35.

[553] Defendants also argues that certain statements in Fairley's declaration contradict her prior sworn deposition testimony. The Court does not rely upon any alleged contradictory statements in Fairley's declaration. Thus, the Court need not decide whether Fairley's declaration contradicted her prior deposition testimony.

**IT IS HEREBY ORDERED** that Defendants City of Gretna, Chief of Police Arthur Lawson, and Officer Tramell Brooks's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

Defendant are entitled to summary judgment on all claims in this litigation except:

(1) Durant's excessive force claim against Officer Brooks under the Fourth Amendment;

(2) Durant's bystander-liability claim against Officer Brooks;

(3) Durant's *Monell* claim against Gretna;

(4) Durant's battery claim against Officer Brooks under Louisiana law;

(5) Durant's malicious prosecution claim against Officer Brooks under Louisiana law; and

(6) Durant's vicariously liability claim against Gretna and Chief Lawson under Louisiana law for Officer Brooks's alleged battery and malicious prosecution.

**NEW ORLEANS, LOUISIANA,** this 17th day of January, 2020.

Nannette Jolivette Brown

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**