UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**RAYMOND DURANT, et al.**                                              **CIVIL ACTION**

**VERSUS**                                                              **NO. 19-147**

**GRETNA CITY, et al.**                                                 **SECTION: "G"(2)**

### ORDER AND REASONS

In this litigation, Plaintiff Raymond Durant ("Plaintiff") brings multiple claims under 42 U.S.C. § 1983 and Louisiana law against the City of Gretna, Chief of Police Arthur Lawson, and Officer Tramell Brooks (collectively, "Defendants").[1] Before the Court is Defendants' "Motion for Partial Summary Judgment on Behalf of Defendants," in which Defendants request summary judgment on Plaintiff's claimed damages for past and future lost earnings, and lost earning capacity.[2] Considering the motion, the memoranda in support and opposition, the record, and the applicable law, the Court denies the motion.

### I. Background

This dispute arises out of a March 16, 2018, police stop in Gretna, Louisiana.[3] Plaintiff asserts that he and his girlfriend, Nena Fairley, were walking from Plaintiff's car parked near his

---

[1] Rec. Doc. 1.

[2] Rec. Doc. 66. Nena Fairley was originally named as Plaintiff in this suit. *See* Rec. Doc. 1. On January 17, 2020, the Court granted Defendants' motion for summary judgment on all of Ms. Fairley's claims. *See* Rec. Doc. 39. Therefore, Ms. Fairly is no longer a party in interest in this action.

[3] Rec. Doc. 66 at 3.

1

home in Gretna, Louisiana.[4] According to Plaintiff, Officer Brooks approached Plaintiff and Fairley, ordered them to stop, handcuffed them, and told them that they were being detained pending an investigation.[5] Plaintiff alleges that, when he asked Officer Brooks what type of investigation was being conducted, Officer Brooks told Plaintiff to "shut the f*** up."[6]

Plaintiff claims that he then reached into his pocket for his cell phone to record the encounter on Facebook Live.[7] Officer Kraly allegedly asked Plaintiff what he was doing and "jumped on top of Plaintiff, punching and kicking him."[8] Plaintiff asserts that Officer Brooks "assisted" Officer Kraly in punching Plaintiff and seizing Plaintiff's phone.[9] Plaintiff avers that Officer Brooks released Fairley, had Plaintiff's car towed, and took Plaintiff to jail.[10] En route to the jail, Plaintiff allegedly told Officer Brooks that he would be filing a complaint against him.[11] Plaintiff claims that Officer Brooks arrested Plaintiff for contempt of court and for violating Gretna City Ordinance 16-66.1 ("Threatening Public Officials").[12] According to Plaintiff, these charges were dismissed on September 20, 2018.[13]

On January 9, 2019, Plaintiff filed a Complaint in this Court against Officer Brooks,

---

[4] *Id.*

[5] *Id.*

[6] *Id.* at 4.

[7] *Id.*

[8] *Id.*

[9] *Id.* at 5.

[10] *Id.*

[11] *Id.* at 5–6.

[12] *Id.* at 6.

[13] *Id.*

Gretna, Chief Lawson, and "Unidentified Parties."[14] On November 4, 2019, Defendants filed a motion for summary judgment asserting qualified immunity.[15] On January 17, 2020, the Court granted in part and denied in part Defendants' motion. Defendants sought interlocutory review of this Court's denial of qualified immunity, which the Fifth Circuit affirmed on September 23, 2020.[16]

On July 13, 2021, Defendants filed the instant motion for summary judgment, seeking dismissal of Plaintiff's claimed damages for past and future lost earnings, and lost earning capacity.[17] On July 20, 2021, Plaintiff filed his opposition to the instant motion.[18] On July 29, 2021, with leave of Court, Defendants filed a reply brief in further support of the instant motion.[19]

## II. Parties' Arguments

### A. *Defendants' Arguments in Support of the Motion for Summary Judgment*

In the Amended Complaint, Plaintiff seeks recovery for past and future lost earnings, and lost earning capacity.[20] Defendants request summary judgment on these categories of damages because they assert that Plaintiff has not produced any evidence to establish his entitlement to recover past and future lost earnings, and lost earning capacity.[21]

As to Plaintiff's past earnings, Defendants argue that, under Louisiana law, Plaintiff

---

[14] Rec. Doc. 1 at 7.

[15] Rec. Doc. 19.

[16] Rec. Docs. 41, 55.

[17] Rec. Doc. 103.

[18] Rec. Doc. 106.

[19] Rec. Docs. 112, 113.

[20] Rec. Doc. 66 at 10.

[21] Rec. Doc. 103 at 1; Rec. Doc. 103-1 at 5–9.

cannot establish "that as a result of the indecent, [Plaintiff] suffers from mental and emotional distress which has effected (sic) his ability to work."[22] In support, Defendants assert that Plaintiff's initial discovery responses indicated that Plaintiff "had not sought or obtained any medical treatment for any injury he allegedly sustained as a result of the incident."[23] Likewise, Defendants assert that Plaintiff testified at his deposition that "he had not sought or obtained any medical treatment for any injury."[24]

Defendants assert that in December 2020 Plaintiff alleged for the first time that he began counseling with his pastor, Kendall Wright.[25] Defendants aver that, at Plaintiff's February 2021 deposition, Plaintiff testified that he began counseling with Pastor Wright in November 2019 and that Plaintiff saw his pastor "every week or two weeks."[26] In response, Defendants subpoenaed Pastor Wright's records regarding his counseling of Plaintiff. Defendants assert that the correspondence from Pastor Wright indicates that "he had spoken to [Plaintiff] 'on a couple of occasions.'"[27] Defendants assert that the "Ministry Survey Form" provided by Pastor Wright is dated November 11, 2020, rather than November 2019.[28] Defendants argue these documents do not mention the Gretna Police Department, Plaintiff's alleged mental anguish, or Plaintiff's ability to work.[29] Additionally, Defendants assert that Plaintiff's discovery responses indicated that he

---

[22] Rec. Doc. 103-1 at 6, 8.

[23] *Id.* at 6 (citing Rec. Doc. 103-3 at 5, 7).

[24] *Id.* (citing Rec. Doc. 103-4 at 4–7).

[25] *Id.*

[26] *Id.* (citing Rec. Doc. 103-5 at 3–4).

[27] *Id.* (quoting Rec. Doc. 103-6 at 1).

[28] *Id.* (citing Rec. Doc. 103-6 at 2).

[29] *Id.* at 6–7.

did not have any records from his alleged counseling with Pastor Wright.[30]

Next, Defendants argue that Plaintiff cannot sufficiently quantify his losses. In support, Defendants assert that Plaintiff has not produced expert reports or expert witnesses to support his claims for lost earnings.[31] Defendants argue that Plaintiff "has not produced, nor identified, nor disclosed any evidence establishing his income prior to the incident."[32] Nor, according to Defendants, has Plaintiff produced any medical evidence to support his claims.[33] Defendants further assert that Plaintiff has not produced any evidence to "establish his income prior to the incident."[34] Instead, Defendants aver that Plaintiff's witness and exhibit list reference Plaintiff's 2018 and 2019 tax returns as possible exhibits.[35] Defendants assert that Plaintiff has not produced business records, invoices, or earning statements to establish his income prior to the incident.[36] Therefore, Defendants submit that Plaintiff "has failed to produce sufficient and competent evidence necessary to support his claim for past lost wages."[37] Accordingly, Defendants argue that they are entitled to summary judgment as a matter of law as to Plaintiff's claimed damages for past lost wages.[38]

Regarding Plaintiff's claimed damages for future lost earnings and loss of earning

---

[30] *Id.* at 7.

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.* (citing Rec. Doc. 97).

[36] *Id.*

[37] *Id.* at 8.

[38] *Id.* at 7–8.

capacity, Defendants argue that Plaintiff has not produced any "medical evidence which at least indicates there could be a residual disability causally related to the accident."[39] Defendants again point to Plaintiff's discovery responses and deposition testimony that he did not seek medical treatment as a result of the incident.[40] Defendants further assert that the records produced by Pastor Wright are "woefully insufficient" for Plaintiff to meet his burden.[41] Thus, Defendants assert they are entitled to summary judgment as to Plaintiff's "claims of lost future earnings and loss of earning capacity."[42]

### B. *Plaintiff's Opposition to the Motion for Summary Judgment*

In opposition, Plaintiff argues that summary judgment should be denied because damages are an issue of fact for the jury to decide.[43] Plaintiff argues that Defendants' motion is "unnecessary" with respect to future lost earnings that require expert testimony, because "[Plaintiff] does not intend to seek any such damages that require expert testimony."[44]

As to Plaintiff's request for past economic loss damages, Plaintiff asserts that the "extensive financial records subpoenaed by Defendants . . . are sufficient to support [his] claim."[45] Plaintiff argues that Defendants' arguments with regard to past earnings "go to the weight of the

---

[39] *Id.* at 8–9 (quoting *Rea v. Wis. Coach Lines, Inc.*, 12-1252, 2014 WL 5039591, at *3 (E.D. La. Oct. 8, 2014) (Duval, J.)).

[40] *Id.* at 9.

[41] *Id.*

[42] *Id.*

[43] Rec. Doc. 106 at 1.

[44] *Id.*

[45] *Id.*

evidence and are better argued to the jury at trial."[46] Further, Plaintiff argues that Defendants' motion is premature because discovery is ongoing. Plaintiff asserts that he "has produced tax returns for the years 2018, 2019, and 2020, medical records, and other documents . . . reflecting his damages."[47] Similarly, Plaintiff asserts that Defendants' Exhibit List includes "numerous records" that Defendants "obtained by subpoena" and that Plaintiff asserts support his claims for past earnings.[48]

Plaintiff argues his "claim to past lost wages is supported as a matter of fact."[49] Plaintiff argues that the documents he has turned over and that Defendants have subpoenaed and listed in their exhibit list "provide support for [his] claim to past lost earnings."[50] Moreover, Plaintiff argues that his own testimony is sufficient to put this issue into dispute, because on summary judgment, a "court may not weigh evidence or make credibility determinations."[51] Plaintiff avers that, at trial, he "will testify to his past inability to earn money as a result of the action[s] of Defendants in this case."[52]

Finally, as to future lost wages, Plaintiff asserts that he "will testify that he lost his business in Gretna because Defendants forced him to leave Gretna in fear for his life and health and that of his family."[53] Plaintiff argues that it "is for the jury to determine" whether Plaintiff

---

[46] *Id.*

[47] *Id.* at 2.

[48] *Id.* at 2–3.

[49] *Id.* at 3.

[50] *Id.*

[51] *Id.* at 3–4 (citing *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)).

[52] *Id.* at 4.

[53] *Id.* at 5.

lost his ability to earn a living as a result of the incident.[54]

C.   **Defendants' Reply in Further Support of the Motion for Summary Judgment**

In reply, Defendants assert that "[a] plaintiff cannot simply allege past lost wages without independent support of the claim."[55] To that end, Defendants argue that "the fact that . . . Defendants independently subpoenaed and obtained records from Hancock Whitney and Navy Federal Credit Union in no way relieves [Plaintiff] of his burden of proof regarding his claims."[56] Defendants argue that it "would be tantamount to trial by ambush" if Defendants were forced "to guess at what evidence [Plaintiff] will attempt to use at trial to support his claim for past lost wages."[57] Defendants assert that Plaintiff offered no evidence in his opposition to the instant motion for summary judgment.[58]

Defendants argue that Plaintiff's assertion that he has produced medical records is "misleading."[59] Defendants allege that in Plaintiff's initial disclosures he admitted that he did not seek or obtain any medical treatment as a result of this incident.[60] Instead, Defendants assert that Plaintiff first alleged in December 2020 that he had begun counseling with his pastor.[61] Defendants contend Plaintiff "did not detail or even mention any other alleged medical

---

[54] *Id.*

[55] Rec. Doc. 113 at 3.

[56] *Id.* at 3–4.

[57] *Id.* at 4.

[58] *Id.*

[59] *Id.*

[60] *Id.* at 5.

[61] *Id.*

treatment."[62] And Defendants argue that the documents produced by Pastor Wright undermine Plaintiff's claim that he had seen Pastor Wright "about 20 times."[63]

Defendant asserts that after the instant motion was filed, Plaintiff's counsel emailed an uncertified psychiatric evaluation of Plaintiff dated May 11, 2021, along with other medical records.[64] Defendants aver that these records are uncertified, do not identify the evaluating facility, do not identify the person who performed the evaluation, do not indicate what type of testing was conducted, nor do the records list why the evaluation was conducted.[65] Defendants also assert that "[t]he evaluation does not contain any independent finding, testing, or diagnosis by any physician . . . but rather is based solely upon 'patient history.'"[66] Defendants argue this evaluation does not support Plaintiff's claims because it contains no information about the cause of Plaintiff's psychological distress, no diagnosis, and no analysis of Plaintiff's claim for past and future lost wages and loss of earning capacity.[67]

As to Plaintiff's request for damages related to future lost earnings and loss of earning capacity, Defendants argue Plaintiff cannot meet his burden.[68] In Plaintiff's opposition, he stated he does not intend to offer expert evidence about future lost wages or his earning capacity.[69] Defendants contend that, under Louisiana law, in order to prove special damages "the 'plaintiff

---

[62] *Id.*

[63] *Id.*

[64] *Id.* at 6.

[65] *Id.*

[66] *Id.*

[67] *Id.*

[68] *Id.* at 8.

[69] *Id. See also* Rec. Doc. 106 at 5.

must present medical evidence which indicates with reasonable certainty that there exists a residual disability related to the accident.'"[70] Therefore, Defendants argue that Plaintiff "is wholly unable to quantify his claim."[71]

### III. Legal Standard

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[72] To decide whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[73] All reasonable inferences are drawn in favor of the nonmoving party. Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[74] If the entire record "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a matter of law.[75] The nonmoving party may not rest upon the pleadings.[76] Instead, the nonmoving party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[77]

---

[70] Rec. Doc. 113 at 8 (quoting *Lemings v. Taylor*, 2021 WL 2585920, at *2 (M.D. La. June 23, 2021)).

[71] *Id.* at 9.

[72] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[73] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[74] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[75] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[76] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[77] *See id.*; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[78] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[79] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and to articulate" precisely how that evidence supports the nonmoving party's claims.[80] The nonmoving party must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[81]

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[82] Moreover, the nonmoving party may not rest upon mere allegations or denials in its pleadings.[83] Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.

---

[78] *Celotex*, 477 U.S. at 323.

[79] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (quoting *Little*, 939 F.2d at 1299).

[80] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[81] *Morris*, 144 F.3d at 380; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[82] *Little*, 37 F.3d at 1075 (internal citations omitted).

[83] *Morris*, 144 F.3d at 380.

## IV. Law and Analysis

In this case, Plaintiff seeks recovery for loss of past and future earnings, and lost earning capacity. Defendants seek partial summary judgment dismissing Plaintiff's these requests for damages because Defendants argue that Plaintiff has not produced sufficient evidence to meet his burden. Plaintiff contends he has produced sufficient evidence and that damages are for the jury to decide.

Under Louisiana law, to recover for past or future earnings, a plaintiff must present evidence that indicates with reasonable certainty that there exists a residual disability causally related to the accident.[84] As to past lost earnings, a plaintiff must prove lost past earnings by a preponderance of the evidence.[85] That evidence may consist of financial records like payroll records, W-2's, tax records, and bank statements.[86] "A claim for loss of earnings need not be proven with mathematical certainty, but only by such proof as reasonably establishes plaintiff's claim. This may consist only of plaintiff's testimony if considered credible by the trier of fact."[87]

On the other hand, loss of future earnings are based on the difference between the plaintiff's earning capacity before and after the disabling injury.[88] "Damages should be estimated on the injured person's ability to earn money, rather than what he actually earned before the injury."[89] Similarly, when awarding damages for loss of earning capacity, a fact finder "should

---

[84] *Kropp v. Occhipinti*, 99-938, p. 6 (La. App. 5 Cir. 1/12/00); 751 So. 2d 347, 350.

[85] *Dauzat v. Canal Ins. Co.*, 96-1261, p. 16 (La. App. 3 Cir. 4/9/97); 692 So. 2d 739, 748.

[86] *Gygax v. Brugoto*, 92-0003, p. 6–8 (La. App. 4 Cir. 11/30/94); 646 So. 2d 1236, 1241.

[87] *Veazey v. State Farm Mut. Auto Ins.*, 587 So. 2d 5, 7 (La. App. 3 Cir. 1991) (citing *Green v. Superior Oil Co.*, 441 So. 2d 54, 56 (La. App. 3 Cir. 1983)).

[88] *Folse v. Fakouri*, 371 So. 2d 1120, 1123 (La. 1979).

[89] *Id.*

consider whether and how much plaintiff's current condition disadvantages him in the work force. The [fact finder] should thus ask . . . what plaintiff might be able to have earned but for his injuries and what he may now earn given his resulting condition."[90]

Here, drawing all reasonable inferences in favor of the non-movant, the Court finds that summary judgment is inappropriate at this juncture. On a motion for summary judgment, the Court "refrains from making credibility determinations or weighing the evidence."[91] Plaintiff has produced some evidence to put into dispute his entitlement to an award for past and future lost earnings and lost earning capacity.

For example, to support his claims of a continuing impairment from the incident, Plaintiff points to counselling sessions with his pastor.[92] Plaintiff has also produced a psychiatric evaluation and has disclosed facilities at which he has allegedly received mental health treatment.[93] Defendants argue that, because Plaintiff did not begin this treatment until well after the incident, it is insufficient to support his claimed damages.[94] However, the timeliness of Plaintiff's treatment goes to the weight of the evidence and is inappropriate for a Court to weigh on summary judgment. Moreover, to quantify his lost earnings, Plaintiff points to three years of tax returns, "medical records, and other documents . . . reflecting his damages."[95] Plaintiff also asserts that he "will testify to his past inability to earn money as a result of the action of

---

[90] *Pierce v. Milford*, 96-92, p. 3 (La. App. 3 Cir. 9/25/96); 688 So. 2d 1093, 1095 (quoting *Batiste v. N.H. Ins. Co.*, 94-1467, pp. 3–4 (La. App. 3 Cir. 5/3/95); 657 So. 2d 168, 170).

[91] *Delta & Pine Land Co.*, 530 F.3d at 398–99.

[92] Rec. Doc. 106 at 2.

[93] *See* Rec. Doc. 113 at 6 & n.3.

[94] Rec. Doc. 103 at 6–8.

[95] Rec. Doc. 106 at 2.

Defendants in this case" and argues that his "testimony is sufficient to support his claim."[96] Plaintiff's testimony may be sufficient, if it is found to be credible by the trier of fact.[97] Again, a court must not make credibility determinations on a motion for summary judgment.[98] Drawing all reasonable inferences in favor of Plaintiff, the Court finds Plaintiff has shown that there are genuine issues of material fact in dispute precluding summary judgment. Accordingly, summary judgment is not warranted.

## V. Conclusion

Considering the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this  26th  day of August, 2021.

*[signature: Nannette Jolivette Brown]*

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[96] *Id.* at 3–4.

[97] *See Veazey*, 587 So. 2d at 7.

[98] *Delta & Pine Land Co.*, 530 F.3d at 398–99.